RONCARI INDUSTRIES, INC. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF WINDSOR LOCKS ET AL.
(SC 17580)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

---

Argued May 18, 2006—officially released January 16, 2007

*Gwendolyn S. Bishop*, with whom, on the brief, was *Paul W. Smith*, for the appellant (plaintiff).

*Carl T. Landolina*, with whom was *Thomas W. Fahey, Jr.*, for the appellee (defendant Frank Bauchiero, Jr.).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Roncari Industries, Inc., appeals from the judgment of the trial court dismissing its appeal from the decision of the named defendant, the planning and zoning commission of the town of Windsor Locks (commission), granting the application of the defendant Frank Bauchiero, Jr., to amend the zoning regulations to allow for valet parking in certain business zones along Route 75 in Windsor Locks by special permit (zoning amendment). The issues presented in this appeal are whether the trial court properly determined that: (1) the commission had satisfied the statutory notice requirements regarding the public hearing on the proposed zoning amendment; (2) the plaintiff had failed to sustain its burden of proving that the commission had neglected to file the proposed zoning amendment in the town clerk's office prior to the public hearing; and (3) the criteria for obtaining a special permit set forth in the zoning amendment, which limit the applicability of the amendment to parcels of land on

Route 75 that were in existence as of October 1, 2001, do not violate the uniformity requirement of General Statutes § 8-2 (a).[1] We affirm the judgment of the trial court.

The record reveals the following facts and procedural history that are relevant to our resolution of this appeal. Bauchiero is an owner of property in a business zone along Route 75 in Windsor Locks. On May 14, 2001, Bauchiero submitted an application to the commission for the zoning amendment that would permit valet parking in certain business zones along Route 75 near Bradley International Airport by special permit. The

---

[1] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, including water-dependent uses as defined in section 22a-93, and the height, size and location of advertising signs and billboards. . . . All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and in adopting such regulations the commission shall consider the plan of conservation and development prepared under section 8-23. Such regulations shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. . . ."

commission scheduled a public hearing on the zoning amendment for July 9, 2001. The commission published notice of the scheduled public hearing in the Journal Inquirer, a local newspaper. At the meeting of the commission on July 9, 2001, the commission voted to postpone the public hearing on the proposed zoning amendment to August 13, 2001. The commission thereafter published notice in the Journal Inquirer that the public hearing had been postponed to August 13, 2001.

On August 13, 2001, the commission opened the public hearing on the proposed zoning amendment, and then continued the public hearing to September 10, 2001. The commission held public hearings on the proposed zoning amendment on September 10, 2001, October 9, 2001, and October 22, 2001. On November 13, 2001, the commission approved the proposed zoning amendment with some changes.

The plaintiff, which owns property in Windsor Locks that abuts Bauchiero's property and is located in a business zone, appealed from the decision of the commission to the Superior Court. In its appeal, the plaintiff claimed that the commission acted illegally, arbitrarily and in abuse of its discretion in adopting the zoning amendment, on the grounds that: (1) the zoning amendment violated General Statutes § 8-6 by prohibiting the zoning board of appeals from granting a variance from any section of the amendment; (2) the zoning amendment violated the uniformity requirement of § 8-2 (a)[2] by restricting its applicability to property located on Route 75 and to parcels of land already in existence as of October 1, 2001; (3) the commission failed to satisfy the notice requirements of General Statutes (Rev. to 2001) § 8-3[3] regarding the public hearing because the

---

[2] See footnote 1 of this opinion.

[3] General Statutes (Rev. to 2001) § 8-3 (a) provides: "Such zoning commission shall provide for the manner in which regulations under section 8-2 or 8-2j and the boundaries of zoning districts shall be respectively established or changed. No such regulation or boundary shall become effective or be

notice given for the originally scheduled public hearing was insufficient to apprise the public that the matter was scheduled to be heard on a later date; and (4) the commission failed to file the proposed amendment timely with the town clerk as required by § 8-3 (a). The trial court sustained the plaintiff's appeal, in part, on the ground that the zoning amendment violated § 8-6 by prohibiting the zoning board of appeals from granting variances from the amendment. The court found that this provision was severable from the zoning amendment as a whole, and invalidated that portion of the regulation.[4] The trial court dismissed the plaintiff's appeal as to all the other claims. This appeal followed.[5]

I

The plaintiff first claims that the trial court improperly determined that the commission had satisfied the

established or changed until after a public hearing in relation thereto, held by a majority of the members of the zoning commission or a committee thereof appointed for that purpose consisting of at least five members, at which parties in interest and citizens shall have an opportunity to be heard. Notice of the time and place of such hearing shall be published in the form of a legal advertisement appearing in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days nor less than ten days, and the last not less than two days, before such hearing, and a copy of such proposed regulation or boundary shall be filed in the office of the town, city or borough clerk, as the case may be, in such municipality, but, in the case of a district, in the offices of both the district clerk and the town clerk of the town in which such district is located, for public inspection at least ten days before such hearing, and may be published in full in such paper. In addition to such notice, such zoning commission may, by regulation, provide for notice by mail to persons who are owners of land which is included in or adjacent to the land which is the subject of the hearing. The commission may require a filing fee to be deposited with the commission to defray the cost of publication of the notice required for a hearing."

All references to § 8-3 in this opinion are to the 2001 revision.

[4] Neither of the defendants appealed from this ruling by the trial court, and this issue is therefore not before us.

[5] The plaintiff filed a petition for certification for review in accordance with General Statutes § 8-8 (o), which was granted by the Appellate Court. We subsequently transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1

notice requirements set forth in § 8-3 (a) for the public hearing on the zoning amendment.[6] Specifically, the plaintiff contends that, although the commission had satisfied the statutory notice requirements for the originally scheduled July 9, 2001 public hearing, it was required by § 8-3 (a) to publish two additional notices when it rescheduled the public hearing. The plaintiff asserts that the commission's failure to publish additional notices of the new public hearing date within the intervals prescribed by § 8-3 (a) was a jurisdictional defect that deprived the commission of jurisdiction over Bauchiero's application for the zoning amendment and therefore invalidated the commission's adoption of the zoning amendment. We disagree.

Whether the notice published by the commission complied with the statutory requirements is a mixed question of fact and law. In the present case, there is no dispute as to the facts found by the trial court on this issue. Rather, the dispute arises from the trial court's application of § 8-3 (a) to those facts. Accordingly, our review of this issue of law is plenary. See *Bridgeport* v. *Plan & Zoning Commission*, 277 Conn. 268, 275, 890 A.2d 540 (2006); see also *Carr* v. *Planning & Zoning Commission*, 273 Conn. 573, 588, 872 A.2d 385 (2005).

The following additional facts and procedural history are necessary to our resolution of this claim. The public hearing on the proposed zoning amendment originally was scheduled for July 9, 2001. Prior to that date, the commission published notice of the hearing in the Journal Inquirer on two dates, June 28, 2001, and July 5, 2001. These notices informed any interested party that a public hearing on the proposed zoning amendment was scheduled for July 9, 2001. During an open session of the commission's July 9, 2001 meeting, the commission voted to reschedule the public hearing to August

[6] See footnote 3 of this opinion.

13, 2001, at the request of Bauchiero. On July 18, 2001, the commission published notice of all the actions it took at its July 9 meeting, including rescheduling the public hearing to August 13, 2001. The commission thereafter held a public hearing over several days and ultimately approved the zoning amendment.

The plaintiff asserts that the commission's decision to continue the public hearing from July 9 to August 13 triggered the statutory requirement in § 8-3 (a) to give notice of the public hearing, and the commission therefore was obligated to publish two additional notices, one not more than fifteen days nor less than ten days before the rescheduled hearing and the other not less than two days before the rescheduled hearing. The plaintiff does not cite any authority supporting this claim, however, and we have not found any such authority.

At the time of the public hearing in the present case, § 8-3 required that "[n]otice of the time and place of such [public] hearing shall be published in the form of a legal advertisement appearing in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days nor less than ten days, and the last not less than two days, before such hearing." General Statutes (Rev. to 2001) § 8-3 (a). Section 8-3 does not require the publication of additional notices when the public hearing is continued or rescheduled; the statute is silent with regard to notice when the hearing is postponed. Similarly, nothing in the town's zoning regulations requires the publication of additional notices when a public hearing is rescheduled or continued.

We repeatedly have held that the " 'fundamental reason for the requirement of notice [in § 8-3] is to advise all affected parties of the opportunity to be heard and

to be apprised of the relief sought.' *Slagle* v. *Zoning Board of Appeals*, 144 Conn. 690, 693, 137 A.2d 542 [1957]; *Winslow* v. *Zoning Board*, 143 Conn. 381, 389, 122 A.2d 789 [1956]. Adequate notice 'will enable parties having an interest to know what is projected and, thus, to have an opportunity to protest.' *Hartford Electric Light Co.* v. *Water Resources Commission*, [162 Conn. 89, 110, 291 A.2d 721 (1971)]." *Jarvis Acres, Inc.* v. *Zoning Commission*, 163 Conn. 41, 47, 301 A.2d 244 (1972). Furthermore, it is well recognized "that [t]he purpose of [the procedural requirements of § 8-3 (a)] is fairly and sufficiently to apprise those who may be affected by the proposed action of the nature and character of the proposed action so as to enable them to prepare intelligently for the hearing." (Internal quotation marks omitted.) *Bridgeport* v. *Plan & Zoning Commission*, supra, 277 Conn. 276, quoting *Kleinsmith* v. *Planning & Zoning Commission*, 157 Conn. 303, 310, 254 A.2d 486 (1968); see also *Passero* v. *Zoning Commission*, 155 Conn. 511, 514, 235 A.2d 660 (1967), cert. denied, 390 U.S. 1004, 88 S. Ct. 1248, 20 L. Ed. 2d 104 (1968); *Edward Balf Co.* v. *East Granby*, 152 Conn. 319, 325, 207 A.2d 58 (1965).

In the present case, it is undisputed that notice properly was published for the initial public hearing, which was scheduled for July 9, 2001. Those notices sufficiently apprised any interested party that a public hearing on the zoning amendment was to be held on July 9, 2001, and enabled interested individuals to prepare for and be present at that meeting. An interested person who attended the commission's proceedings on July 9, 2001, would have learned of the date of the rescheduled public hearing. Moreover, the commission thereafter published notice in the Journal Inquirer that it had rescheduled the public hearing until August 13, 2001.[7]

[7] This case is distinguishable from those circumstances in which additional public notices have been required because the application acted on at a subsequent hearing is substantially different from the original application for

We conclude that the trial court properly determined that the commission had satisfied the notice requirements of § 8-3 (a) and was not required to publish additional notices for the rescheduled August 13, 2001 public hearing.

## II

The plaintiff next claims that the trial court improperly determined that the plaintiff had failed to sustain its burden of proving that the defendants had neglected to file the proposed zoning amendment in the office of the Windsor Locks town clerk as required under § 8-3, which provides that "a copy of such proposed regulation or boundary shall be filed in the office of the town . . . clerk . . . for public inspection at least ten days before such hearing . . . ." General Statutes (Rev. to 2001) § 8-3 (a). The plaintiff contends that the defendants failed to file the proposed amendment with the Windsor Locks town clerk prior to the July 9, 2001 public hearing, and that the defendants' failure to comply with § 8-3 (a) in this manner deprived the commission of jurisdiction over the application and rendered the commission's approval of the zoning amendment invalid. We disagree.

The following additional facts are necessary to the resolution of this claim. By agreement of the parties, the trial court was provided with an affidavit from the Windsor Locks town clerk that stated that at the time of the zoning amendment at issue, he did not keep a log of the receipt of proposed zoning amendments. The

which the first notices were published. See, e.g., *Urbanowicz* v. *Planning & Zoning Commission*, 87 Conn. App. 277, 299, 865 A.2d 474 (2005) (changes that added additional affected lot and legal authority under which application was submitted rendered it new application requiring publication of new notices); *Lauver* v. *Planning & Zoning Commission*, 60 Conn. App. 504, 509–11, 760 A.2d 513 (2000) (amending application to change description of subject property rendered it new application requiring publication of new notices).

affidavit further stated that the town clerk's practice was to remove such amendments after action had been taken by the commission. The affidavit further identified and submitted to the court a copy of the proposed zoning amendment in the present case that had been initialed by the town clerk as being received in his office on July 24, 2001. The trial court found that this copy of the proposed zoning amendment had been found in the files of Bauchiero's attorney. The trial court determined that it was the plaintiff's burden to prove that the amendment had not been filed with the town clerk as required, and further noted that there is a presumption that public officials act in compliance with the law. See *State* v. *Figueroa*, 235 Conn. 145, 180, 665 A.2d 63 (1995) ("there is a presumption that public officials entrusted with specific public functions related to their jobs properly carry out their duties"). After reviewing all of the evidence produced, which the trial court found was "circumstantial," the trial court refused to draw an inference that the amendment had not been filed with the town clerk, and found that the plaintiff had not sustained its burden of proving that the amendment was not filed with the town clerk ten days prior to July 9, 2001.

We begin our analysis of this claim by setting forth the appropriate standard of review. Whether a proposed zoning amendment had been filed with the town clerk in compliance with § 8-3 (a) is a factual determination that cannot be disturbed on appeal unless it is shown to be clearly erroneous. See *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 614, 830 A.2d 164 (2003) ("[A] question of fact . . . will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is

left with the definite and firm conviction that a mistake has been made." [Internal quotation marks omitted.]).

It is well established that compliance with the provisions of § 8-3 (a) that require the filing of a copy of the proposed zoning amendment with the town clerk at least ten days before the public hearing is a prerequisite to the commission's exercising its jurisdiction, and failure to comply with the requirement is a jurisdictional defect that renders the commission's zoning amendment invalid. See *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 374, 378, 610 A.2d 617 (1992) ("strict compliance with [the requirement of] § 8-3 (a) [to file a copy of a proposed zoning amendment ten days prior to the public hearing] was a prerequisite to the [planning and zoning commission's] exercise of its power to amend the town zoning regulations"); *Scovil* v. *Planning & Zoning Commission*, 155 Conn. 12, 14–15, 230 A.2d 31 (1967) (failure to file copy of zoning amendment with town clerk in accordance with § 8-3 would be jurisdictional defect and zoning regulations would be invalid); *State ex rel. Capurso* v. *Flis*, 144 Conn. 473, 481, 133 A.2d 901 (1957) ("[c]ompliance with the statutory procedure [of the predecessor to § 8-3 (a) requiring a copy of the proposed amendment to be filed with the town clerk] was a prerequisite to any valid and effective change in zonal boundaries"); *Bombero* v. *Planning & Zoning Commission*, 17 Conn. App. 150, 155, 550 A.2d 1098 (1988) ("because the requirements of § 8-3 [a] were not met by the proper filing in the office of the town clerk, the commission acted without jurisdiction and its approval of the zone change and the special permit exception was invalid").

It is also well established that the party challenging the validity of a zoning amendment, here, the plaintiff, has the burden of proving that the notice requirements were not met. See *Scovil* v. *Planning & Zoning Commission*, supra, 155 Conn. 17; *Nazarko* v. *Zoning Com-*

*mission,* 50 Conn. App. 517, 520, 717 A.2d 853, cert. denied, 247 Conn. 941, 723 A.2d 318 (1998). Furthermore, we have recognized that this burden is difficult to meet, particularly when the trial court decided the case a significant length of time, here, more than three years, after the public hearing had concluded. See *Scovil* v. *Planning & Zoning Commission,* supra, 17.

We cannot conclude in the present case that the trial court's findings with respect to the filing of the proposed zoning amendment in the town clerk's office were clearly erroneous. The trial court carefully reviewed the evidence, which was equivocal at best, and determined that the plaintiff had not sustained its burden of proof. We do not find any basis for disturbing that determination.

Moreover, we note, as previously stated herein, that the public hearing on the proposed zoning amendment was continued from July 9, 2001, to August 13, 2001. Accordingly, any party seeking to review the proposed zoning amendment prior to the actual beginning of the public hearing on August 13, 2001, would have had an adequate opportunity to review the proposed zoning amendment, which was on file with the Windsor Locks town clerk at least as of July 24, 2001. As we discussed in part I of this opinion, the purpose of the procedural notice requirements of § 8-3 (a) is "fairly and sufficiently to apprise those who may be affected by the proposed action of the nature and character of the proposed action so as to enable them to prepare intelligently for the hearing." (Internal quotation marks omitted.) *Bridgeport* v. *Plan & Zoning Commission,* supra, 277 Conn. 276; *Bombero* v. *Planning & Zoning Commission,* supra, 17 Conn. App. 154. Even if the plaintiff were correct in its assertion that the amendment was not on file until July 24, 2001, the proposed amendment was available in the office of the town clerk more than

ten days prior to the opening of the public hearing on August 13, 2001.

## III

We now reach the merits of the commission's decision. The plaintiff's final claim is that the trial court improperly determined that the zoning amendment does not violate the uniformity requirement of § 8-2 (a). Specifically, the plaintiff asserts that the criteria set forth in the zoning amendment, which limit the applicability of the amendment to parcels of land located on Route 75 that were in existence prior to October 1, 2001, violate the uniformity requirement of § 8-2 (a) because similarly situated landowners are treated differently and in an arbitrary manner unrelated to the health, safety or welfare of the public.[8] We disagree, and, accordingly, we affirm the judgment of the trial court.

We first set forth the appropriate standard of review. "The proper, limited scope of judicial review of a decision of a local zoning commission when it acts in a legislative capacity by amending zoning regulations is well established. [T]he commission, acting in a legislative capacity, [has] broad authority to adopt . . . amendments. . . . In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial

---

[8] The zoning amendment set forth the following required criteria for the granting of a special permit for airport valet parking use: "(1) [p]arcel or parcels of land existing as of October 1, 2001 fronting on and possessing an existing direct access to Route 75 in a [b]usiness zone which contain existing buildings and improvements committed to uses which substantially under-utilize the parcel's parking capacity and due to unique characteristics are unlikely to fully utilize such capacity if and/or when developed as some other permitted use in the underlying zone; (2) [s]ubstantial benefit to the [t]own; (3) [c]ompatability with the surrounding area; (4) [s]etback a minimum of 200 feet from [Route] 75 and utilizing only that portion of the lot in excess of the minimum lot area required in the [d]istrict; [and] (5) [s]creening (natural or man-made) from [Route] 75 and neighboring properties in accordance with the standards set forth . . . below."

court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." (Citation omitted; internal quotation marks omitted.) *Harris* v. *Zoning Commission*, 259 Conn. 402, 415–16, 788 A.2d 1239 (2002).

Section 8-2 (a) provides in relevant part: "All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . ." As is apparent from the text of § 8-2 (a), the same statute that requires uniformity in the regulations also specifically authorizes special permits or special exceptions. In 1959, "the legislature added the provision authorizing the adoption by a zoning commission of regulations which would allow a use subject to standards set forth in the regulations and under special conditions, after the obtaining of a special permit. The power of local zoning authorities was thus broadened, and they were allowed to impose certain standards and conditions on the use of property when the public interest required it. Under the amended statute, the zoning commission could by regulation reserve to itself or delegate to any of

the other specified agencies power to grant the special permit or special exception." *Summm* v. *Zoning Commission,* 150 Conn. 79, 86, 186 A.2d 160 (1962); see Public Acts 1959, No. 614, § 2. The fact that § 8-2 (a) explicitly authorizes special permits demonstrates that the legislature itself recognized the need for exceptions to uniformity, and, therefore, complete uniformity was not mandated. The special permit authorization in § 8-2 (a) allows a zoning commission, acting in its legislative capacity, to adopt regulations that allow certain uses within a zone by special permit subject to legislatively prescribed conditions.

"We previously have discussed at length the implications associated with a zoning authority carrying out a legislative act. Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . . The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. . . . This legislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. . . . Zoning must be sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. . . . The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission. Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion." (Internal quotation marks omitted.) *Campion* v. *Board of Aldermen,* 278 Conn. 500, 526–27, 899 A.2d 542 (2006).

In the present case, the commission acted in its legislative capacity to adopt the zoning amendment, which allows valet parking by special permit in certain business zones that meet the specific criteria set forth in the amendment. In upholding the amendment, the trial court found that "the commission was clearly trying to balance the need to service the airport with the desire to foster appropriate and tax-producing uses." The zoning amendment itself supports the trial court's conclusion. In the section entitled "[p]urpose," the amendment provides: "The [c]omission recognizes that the demonstrated and projected growth of the Bradley International Airport has increased the need for valet parking at locations with convenient access to the airport. The intent of this section is to provide flexibility in design and use for non-frontage areas of certain parcels of [b]usiness zoned land in the airport corridor which (1) are less appropriate for other [b]usiness [u]ses; (2) are sufficiently screened and buffered from neighboring properties and public views; (3) are substantially setback from Route 75; and (4) adequately address traffic safety concerns."

The plaintiff claims that the criteria that limit the applicability of the amendment to parcels along Route 75 that have been in existence as of October 1, 2001, are arbitrary and unrelated to the health, safety or welfare of the public.[9] We disagree. It is well established

---

[9] On appeal to this court, the plaintiff also claims that the zoning amendment was an inappropriate exercise of the commission's authority because it "has seemingly been tailored to fit" the parcel of land owned by Bauchiero and therefore constitutes special treatment of Bauchiero. This claim, however, is not properly before us. Although the plaintiff raised this claim during oral argument in the trial court, it was not addressed by the trial court in its memorandum of decision, and the plaintiff did not file a motion for articulation asking the trial court to rule on that issue. The plaintiff has failed to provide a record that is a proper predicate for appellate review. See Practice Book §§ 60-5 and 61-10; *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52–53, 717 A.2d 77 (1998). We therefore decline to review this claim.

that "[z]oning regulations are adopted in the exercise of the police power of the [s]tate and to be valid must have a rational relation to the health, safety, welfare and prosperity of the community." *Strain* v. *Mims*, 123 Conn. 275, 285–86, 193 A. 754 (1937). In the present case, the record demonstrates that the commission reasonably was concerned about limiting valet parking so as to encourage higher-end uses of property in the town, to promote uses that would generate higher tax revenue, to address traffic safety concerns and to limit the environmental impact of such uses. The record further reveals that in light of these concerns, the commission itself added the criteria limiting the zoning amendment's applicability to parcels of land in existence as of October 1, 2001, that had existing direct access to Route 75. Limiting the applicability of the zoning amendment in this manner was not arbitrary because it enabled the commission to control the number of parcels to which the amendment would apply, thereby limiting the impact of the amendment on the town. Specifically, the amendment applied only to parcels that were in existence prior to the passage of the amendment and prohibited landowners from altering property lines in order to qualify for a special permit. Furthermore, October 1, 2001, was not an arbitrary date, but, rather, was the most recent uniform municipal assessment date prior to the passage of the zoning amendment. See General Statutes § 12-62a (a). The record reveals, therefore, that these criteria were rationally related to the health, safety, welfare and prosperity of the community. Accordingly, we conclude that the trial court properly determined that the conclusion of the commission was supported by the record and the zoning amendment did not violate the uniformity requirements of § 8-2.

The judgment is affirmed.

In this opinion the other justices concurred.