JOSEPHINE GAIDA ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE
CITY OF SHELTON
(AC 28421)

Flynn, C. J., and Lavery and West, Js.

Argued November 13, 2007—officially released May 27, 2008

*Ian Angus Cole*, for the appellants (plaintiffs).

*Thomas J. Welch*, with whom, on the brief, was *John H. Welch, Jr.*, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiffs, Josephine Gaida and Jack Gaida, appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant, the planning and zoning commission of the city of Shelton (commission), approving an amendment to the zoning map that changed the zone of the plaintiffs' property from a primarily light industrial zone (IA-2) with a small portion in a residential zone (R-1) to an entirely residential zone. On appeal, the plaintiffs claim that the court improperly concluded that (1) notice of the rescheduled public hearing was not required to conform to the provisions of General Statutes § 8-7d (a)[1] and (2) the alteration of the zoning scheme did not constitute impermissible spot zoning. We conclude that notice was proper but that the map amendment was indeed spot zoning and, accordingly, reverse the judgment of the trial court.

The record reveals the following facts and procedural history. The plaintiffs own real property in Shelton designated as 405 Long Hill Avenue. The property is located between Route 8 and Long Hill Avenue, two roads that run approximately parallel to each other. The overall zoning scheme of the area is a mixture of commercial, light industrial and residential. Until April, 2004, the R-1 zone was set at a distance of about 200 feet west of,

---

[1] General Statutes § 8-7d provides in relevant part: "(a) In all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission . . . [n]otice of the hearing shall be published in a newspaper having a general circulation in such municipality where the land that is the subject of the hearing is located at least twice, at intervals of not less than two days, the first not more than fifteen days or less than ten days and the last not less than two days before the date set for the hearing. . . .

"(d) The provisions of subsection (a) of this section shall not apply to any action initiated by any zoning commission, planning commission or planning and zoning commission regarding adoption or change of any zoning regulation or boundary or any subdivision regulation. . . ."

and parallel to, Long Hill Avenue, without regard for property lines. From this boundary line to Route 8, the area was zoned IA-2 light industrial. Most of the plaintiffs' property lay in the IA-2 zone; however, the only road access available to the property was through a forty foot wide access strip in the R-1 zoned area from Long Hill Avenue. The Shelton zoning regulations prevent a property owner from accessing his or her industrially zoned property by way of a residentially zoned property.

On February 13, 2003, the Shelton zoning enforcement officer served the plaintiffs with an order to cease and desist "any removal, filling, or grading of rock or dirt at 405 Long Hill Avenue" and to "remove all commercial related equipment" because "the entire property is located in a R-1 zone." The plaintiffs filed an application for a variance of the zoning regulations so that they could access their property for a use permitted in an IA-2 zone. At about the same time, the commission initiated proceedings to change the zone designation of the subject property so that it would lie entirely within an R-1 zone.

The commission scheduled a public hearing for January 27, 2004, to consider the proposed amendment to the zoning map. The commission published notice of the public hearing on January 15, 2004, and again on January 22, 2004, in the Connecticut Post. The meeting was cancelled due to inclement weather, and the hearing was rescheduled on January 27, 2004, for February 5, 2004. The commission published notice of this meeting in the Connecticut Post on January 29, 2004, and February 3, 2004. The public hearing was held on February 5, 2004, and continued to February 10, 2004. On April 13, 2004, the commission adopted a resolution that approved the proposed zone change affecting the plaintiffs' property. Notice of this decision was published on April 22, 2004.

The plaintiffs appealed from the commission's decision to the Superior Court, which dismissed the appeal. The court first determined that notice of the public hearing on February 5, 2004, was proper and adequate, concluding that the commission was exempt from the notice requirements of § 8-7d (a) because the zoning change was a self-initiated action. The court then rejected the plaintiffs' claims that the zone change was spot zoning. It found that the first prong of the test to identify spot zoning, namely, the size of the area of land affected by the zone change; see *Campion* v. *Board of Aldermen*, 85 Conn. App. 820, 849 n.21, 859 A.2d 586 (2004), rev'd on other grounds, 278 Conn. 500, 899 A.2d 542 (2006); was met, but it also found that substantial evidence in the record supported the commission's decision that the zone change was in accordance with the zoning regulations and comprehensive plan. See id.

On August 2, 2005, the plaintiffs moved to open the judgment and to reargue. The motion to reargue was granted, but the motion to open was denied and the dismissal of the appeal was reaffirmed. The court was persuaded by the commission's argument that notice was proper in this case pursuant to the plain language of General Statutes §§ 8-3[2] and 8-7d, which explicitly exempts the commission from the notice requirements. Following that decision, the plaintiffs filed the present appeal after this court granted their petition for certification to appeal. Additional facts will be set forth as necessary.

[2] General Statutes § 8-3 (a) provides in relevant part: "Such zoning commission shall provide for the manner in which regulations under section 8-2 or 8-2j and the boundaries of zoning districts shall be respectively established or changed. No such regulation or boundary shall become effective or be established or changed until after a public hearing in relation thereto, held by a majority of the members of the zoning commission or a committee thereof appointed for that purpose consisting of at least five members. Such hearing shall be held in accordance with the provisions of section 8-7d. . . ."

I

The plaintiffs claim that the court improperly held that the commission had satisfied the notice requirement pursuant to §§ 8-3 and 8-7d. The commission argues that § 8-7d (d) is plain and unambiguous. Although we agree with the court's conclusion that the notice was adequate, we do so for different reasons.

"Whether the notice published by the commission complied with the statutory requirements is a mixed question of fact and law." *Roncari Industries, Inc.* v. *Planning & Zoning Commission*, 281 Conn. 66, 72, 912 A.2d 1008 (2007). In the present case, there is no dispute as to the facts found by the court on this issue. Rather, the dispute arises from the court's application of § 8-7d (d) to those facts. Accordingly, our review of this issue of law is plenary. See *Bridgeport* v. *Plan & Zoning Commission*, 277 Conn. 268, 275, 890 A.2d 540 (2006); see also *Carr* v. *Planning & Zoning Commission*, 273 Conn. 573, 588, 872 A.2d 385 (2005).

The following additional facts and procedural history are necessary to our resolution of the plaintiffs' claim. The plaintiffs do not make a claim that notice was improper for the originally scheduled meeting on January 27, 2004. The plaintiffs also do not raise any claim in connection with the continuation of the meeting to February 10, 2004. The plaintiffs' sole claim on this issue is addressed to the hearing held on February 5, 2004, because the publication of notice was not within the intervals prescribed by § 8-7d (a). The court ruled for the commission both in its original memorandum of decision and in its subsequent memorandum of decision on the plaintiffs' motion to open and to reargue. On both occasions, the court relied on § 8-7d (d) for its conclusion that no notice is required when a zoning commission initiates its own action to amend the zoning

map. Specifically, in the second memorandum of decision, the court focused on the plain language of § 8-7d (d).

We begin with a discussion of the court's reasoning. Well established principles govern our construction of § 8-7d. "It is a basic tenet of statutory construction that the intent of the legislature is to be found not in an isolated phrase or sentence but, rather, from the statutory scheme as a whole. *State* v. *Breton*, 235 Conn. 206, 226, 663 A.2d 1026 (1995); see also *Thames Talent, Ltd.* v. *Commission on Human Rights & Opportunities*, 265 Conn. 127, 136, 827 A.2d 659 (2003) (in ascertaining statutory meaning, we look to, inter alia, relationship of statute to other legislation); *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002) (statutes relating to same subject matter are construed so as to create rational, coherent and consistent body of law)." (Internal quotation marks omitted.) *State* v. *Wilcox*, 105 Conn. App. 24, 31, 936 A.2d 295 (2007), cert. denied, 286 Conn. 909, 944 A.2d 981 (2008). "[U]nder General Statutes § 1-2z, we cannot look beyond the text of the statutory language if that language, as applied to the facts of the case, is plain and unambiguous and does not yield a bizarre or unworkable result." (Internal quotation marks omitted.) *Edwards* v. *Commissioner of Correction*, 105 Conn. App. 124, 132, 936 A.2d 716 (2008). Further, "[w]hen changes have been introduced by amendment to a statute, the presumed change does not go any further than that which is expressly declared or necessarily implied. . . . We cannot impute to the legislature . . . in the absence of an intent clearly expressed in the act, [an intent] to enact [a statute] which involves a departure from existing statutory law." (Citation omitted; internal quotation marks omitted.) *Iovieno* v. *Commissioner of Correction*, 242 Conn. 689, 699–700, 699 A.2d 1003 (1997).

As discussed in *Carr* v. *Woolwich*, 7 Conn. App. 684, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), overruled in part by *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 446 n.7, 623 A.2d 1007 (1993), prior to 1977, "General Statutes § 8-7d did no more than provide that 'in all matters wherein a formal application, request or approval must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals, the date of receipt of such application' would be measured from the agency's next regularly scheduled meeting or thirty-five days from the application date, whichever was sooner." Id., 690; see Public Acts 1977, No. 77-450, § 4. With the passage of No. 77-450 of the 1977 Public Acts, § 8-7d (d) was added to the statute and provided an exception to the time limits of subsection (a). "This exception recognizes that, where a zoning agency is considering adoption of or change in a zoning regulation or boundary, it is acting in its legislative capacity and should not, therefore, be restricted by the mandatory time limits of General Statutes § 8-7d (a). This exception is in turn limited, however, to the situation in which the proposal for legislative adoption or change is 'initiated by . . . [the] zoning or plan or zoning and planning commission.' " *Carr* v. *Woolwich*, supra, 698; see R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 2:3, p. 30.

Number 03-177 of the 2003 Public Acts, titled, "An Act Concerning Consistency in Municipal Land Use Administrative Review Processes," altered the statutory scheme by placing the notice requirements that formerly had been part of § 8-3 (a) into § 8-7d (a). No changes were made, however, to § 8-7d (d). Representative Stephen Fontana asserted that the "bill standardizes the [time frames] that local land use boards and commissions must use to act upon applications and the notification requirements that they must follow for

hearings that they hold to review those applications. This bill does not, however, change the substantive jurisdiction or responsibilities of any of these local agencies." 46 H.R. Proc., Pt. 11, 2003 Sess., pp. 3588–89. There is further comment that the section in the public act relevant to § 8-7d "creates a standardized process itself." Id., p. 3589.

There is no expressed intent in the 2003 act itself or the legislative history that there is a departure from then existing statutory law. See *Iovieno* v. *Commissioner of Correction*, supra, 242 Conn. 699–700. The application of this subsection to the entirety of § 8-7d (a) leads to a bizarre and unworkable result never anticipated by the legislature. Adopting the court's interpretation results in a statutory scheme that creates overbroad powers in zoning boards and commissions, allowing them to alter the zoning maps without notice and thereby hindering any interested parties' ability to be heard on the proposed changes. In reviewing chapter 124 of the General Statutes, which encompasses the zoning statutes, we are persuaded that the legislature intended that a public hearing be held that affords interested parties the opportunity to be heard on a proposed change. See General Statutes § 8-3 (a) and (b).

We are further convinced of this interpretation from our review of recent legislative history. In addressing Public Acts 2006, No. 06-80, which encompass the most recent alterations to § 8-7d,[3] both the House of Representatives and the Senate discussed the increased

[3] Public Acts 2006, No. 06-80, amended the notice provisions of § 8-7(d) to provide in relevant part: "(g) (1) Any zoning commission, planning commission or planning and zoning commission initiating any action regarding adoption or change of any zoning regulation or boundary or any subdivision regulation or regarding the preparation or amendment of the plan of conservation and development shall provide notice of such action in accordance with this subsection in addition to any other notice required under any provision of the general statutes.

"(2) A zoning commission, planning commission or planning and zoning commission shall establish a public notice registry of landowners, electors

notice requirements that were needed when a land use body initiates a zone change or subdivision regulation change. See 49 S. Proc., Pt. 8, 2006 Sess., pp. 2580–85; 49 H.R. Proc., Pt. 7, 2006 Sess., pp. 2206–15, 2257–88. In discussing increased notice, Representative Lewis J. Wallace, Jr., remarked that "when a municipality initiates a change in its land use regulations, and typically, that's either done when a municipality implements a plan of conservation and development, or some city-wide zoning change . . . [a]t *this point, a municipality is only required to put a legal notice in the newspaper.*" (Emphasis added.) 49 H.R. Proc., Pt. 7, 2006 Sess., p. 2207. He further commented that the new provisions in § 8-7d (g) are "secondary to the legal

and nonprofit organizations qualified as tax-exempt organizations under the provisions of Section 501 (c) of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, requesting notice under this subsection. Each municipality shall notify residents of such registry and the process for registering for notice under this subsection. The zoning commission, planning commission or planning and zoning commission shall place on such registry the names and addresses of any such landowner, elector or organization upon written request of such landowner, elector or organization. A landowner, elector or organization may request such notice be sent by mail or by electronic mail. The name and address of a landowner, elector or organization who requests to be placed on the public notice registry shall remain on such registry for a period of three years after the establishment of such registry. Thereafter any land owner, elector or organization may request to be placed on such registry for additional periods of three years.

"(3) Any notice under this subsection shall be mailed to all landowners, electors and organizations in the public notice registry not later than seven days prior to the commencement of the public hearing on such action, if feasible. Such notice may be mailed by electronic mail if the zoning commission, planning commission or planning and zoning commission or the municipality has an electronic mail service provider.

"(4) No zoning commission, planning commission or planning and zoning commission shall be civilly liable to any landowner, elector or nonprofit organization requesting notice under this subsection with respect to any act done or omitted in good faith or through a bona fide error that occurred despite reasonable procedures maintained by the zoning commission, planning commission or planning and zoning commission to prevent such errors in complying with the provisions of this section."

notice that the municipality has to print in the newspaper of general circulation . . . ." Id., p. 2263.[4] The transcript of the proceedings from the Senate echoes this legislative view that notice was required in the form of a newspaper advertisement. Senator Eric D. Coleman, in making his argument for the increased notice, stated that "the current notice requirements, when changes are initiated by a land use body, which involve newspaper publication, do not constitute effective notice to many of the residents of the town . . . ." 49 S. Proc., Pt. 8, 2006 Sess., p. 2582. This clearly shows that it was never the intent of the legislature to dispense with the notice requirement on a land use body's initiation of zoning changes but that instead it interpreted the statute as requiring notice in the form that the commission used in this case—through a newspaper advertisement. Therefore, the court's interpretation of this statute would clearly lead to a bizarre and unintended result.

Nevertheless, albeit for different reasons, the court correctly concluded that the notice in this case was adequate. The holding in *Roncari Industries, Inc.*, is controlling in this case. Our Supreme Court concluded that the language now encompassed in § 8-7d (a) "does not require the publication of additional notices when the public hearing is continued or rescheduled; the statute is silent with regard to notice when the hearing is postponed."[5] *Roncari Industries, Inc.* v. *Planning & Zoning Commission*, supra, 281 Conn. 73.

Our courts "repeatedly have held that the fundamental reason for the requirement of notice [in § 8-7d] is

---

[4] See also Representative Wallace's statement that "the municipality is *still* required to put the legal notice in the newspaper." (Emphasis added.) 49 H.R. Proc., Pt. 7, 2006 Sess., p. 2214.

[5] The public hearing at issue in *Roncari Industries, Inc.*, was scheduled for 2001, prior to Public Acts 2003, No. 03-177, which deleted the notice requirement in § 8-3 (a) and placed a substantially similar notice requirement in § 8-7d (a).

to advise all affected parties of the opportunity to be heard and to be apprised of the relief sought. . . . Adequate notice will enable parties having an interest to know what is projected and, thus, to have an opportunity to protest. . . . Furthermore, it is well recognized that [t]he purpose of [the procedural requirements of § 8-7d (a)] is fairly and sufficiently to apprise those who may be affected by the proposed action of the nature and character of the proposed action so as to enable them to prepare intelligently for the hearing." (Citations omitted, internal quotation marks omitted.) Id., 73–74.

Because it was undisputed that notice properly was published for the initial public hearing, those notices sufficiently apprised any interested party that a public hearing on the zoning amendment was to be held and enabled interested individuals to prepare for and be present at that meeting. Furthermore, the public hearing on this issue was rescheduled on the same day the original meeting was cancelled.[6] The commission thereafter published notice in the Connecticut Post that it had rescheduled the public hearing until February 5, 2004. This was not required to alert interested parties of the rescheduling and was not defective under §§ 8-3 (a) or 8-7 (d).

## II

The plaintiffs next claim that the zoning map change initiated by the commission[7] was spot zoning and therefore violated the police powers of the town and the

---

[6] The defendant's notice of cancellation and notice of special meeting were both dated January 27, 2004, as evidenced in exhibits N and O of the second supplemental return of record, filed December 9, 2004.

[7] Our Supreme Court has reviewed land use body initiated zoning changes for spot zoning in *Pierrepont* v. *Zoning Commission*, 154 Conn. 463, 226 A.2d 659 (1967), *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission*, 152 Conn. 7, 202 A.2d 241 (1964), and *Village Builders, Inc.* v. *Town Plan & Zoning Commission*, 145 Conn. 218, 140 A.2d 477 (1958). Although spot zoning was not found in these cases, the case law does not preclude a finding of spot zoning when a land use body rather than an individual applicant initiates the zone change. Other jurisdictions have found an impro-

uniformity requirements of General Statutes § 8-2.[8] The commission argues that the court correctly ruled that there was substantial evidence in the record to support its position that the zone change was in accord with the comprehensive town zoning plan. We agree with the plaintiffs.

"The standard of review according to which courts must analyze challenges to legislative decisions of local zoning authorities is well settled. In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the [zoning authority]

priety to exist in situations in which the rezoning of a small parcel of land disadvantages the owner of that land. See *Caputo* v. *Board of Appeals*, 331 Mass. 547, 120 N.E.2d 753 (1954); *Lowe* v. *Missoula*, 165 Mont. 38, 525 P.2d 551 (1974).

[8] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough . . . may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and in adopting such regulations the commission shall consider the plan of conservation and development prepared under section 8-23. Such regulations shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. . . ."

must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." (Citations omitted; internal quotation marks omitted.) *Konigsberg* v. *Board of Aldermen*, 283 Conn. 553, 582, 930 A.2d 1 (2007).

Spot zoning is "impermissible in this state." *Campion* v. *Board of Aldermen*, supra, 85 Conn. App. 849–50, 859; see also *Morningside Assn.* v. *Planning & Zoning Board*, 162 Conn. 154, 161, 292 A.2d 893 (1972). Spot zoning had been defined as "the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood. . . . Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole. . . . The vice of spot zoning lies in the fact that it singles out for special treatment a lot or a small area in a way that does not further such a [comprehensive] plan." (Citation omitted; internal quotation marks omitted.) *Campion* v. *Board of Aldermen*, supra, 849 n.21. "A 'comprehensive plan' means a general plan to control and direct the use and development of property in a municipality or a large part of it by dividing it into districts according to the present and potential use of the properties. . . . Action by a zoning authority which gives to a single lot or a small area privileges which are not extended to other land in the vicinity is in general against sound public policy and obnoxious to the law." (Citations omitted.) *Bartram* v. *Zoning Commission*, 136 Conn. 89, 93, 68 A.2d 308 (1949). "The

obvious purpose of the requirement of uniformity in the regulations is to assure property owners that there shall be no improper discrimination, all owners of the same class and in the same district being treated alike . . . ." (Internal quotation marks omitted.) *Bartsch* v. *Planning & Zoning Commission*, 6 Conn. App. 686, 689, 506 A.2d 1093 (1986). "Although we recognize that not every extension of an existing district is, ipso facto, a compliance with a comprehensive plan and consequently not spot zoning . . . [t]he ultimate test is whether, upon the facts and circumstances before the zoning authority, the extension is, primarily, an orderly development of an existing district which serves a public need in a reasonable way or whether it is an attempt to accommodate an individual property owner." (Internal quotation marks omitted.) *Konigsberg* v. *Board of Aldermen*, supra, 283 Conn. 592–93, quoting *Wade* v. *Town Plan & Zoning*, 145 Conn. 592, 596, 145 A.2d 597 (1958).

Using this two-pronged test, the court concluded that the first prong "is arguably met" but that substantial evidence in the record supported the commission's decision that this zone change was in accord with the comprehensive plan. The first prong, that the area must be small in size, is more than arguably met through admissions by the commission and the facts on the record. The planning and zoning administrator twice stated that this area was "small" but an area that needed to be addressed after it had been recognized by his staff that the zoning boundaries and the property lines did not conform. Further, the record shows that this area consisted of six lots, one that was the lot in issue, two of the lots backed up to the industrial portion of the plaintiffs' land, and the remaining three lots were bisected by the zoning boundary. The plaintiffs' lot was uniquely situated because the primary portion of their

lot was in the IA-2 zone, having only a throughway through the residential zone.

The record also reveals that this zoning amendment was initiated by the town at about the time that the plaintiffs filed their appeal challenging the cease and desist order because even though the order claimed that the property was within the R-1 zone, it actually was primarily within the IA-2 zone. Further, the planning and zoning administrator noted in his presentation of the proposed change that, on the plaintiffs' property, the town "had some legal billing" because the plaintiffs claimed that they had a nonresidential use on their land, which the planning and zoning department believed they did not. The commission stated that its reason for approving the zone change was to have the zoning scheme in line with property boundaries. There was a comment by the planning and zoning administrator that when the zoning maps were first drawn forty years ago, no one knew where the property lines were, so the lines were set parallel to the streets. He stated that had it been known where the property lines fell, the lines would have been put along the property's boundaries.

A review of the record, however, shows that the stated rationale for the amendment is not legally supported. The record clearly shows that the zone change leaves more properties in that area unchanged than changed. These unchanged properties are similarly situated, in that part of the property is in the residential zone and the rest is in the light industrial zone. The properties left unaffected also are along Long Hill Avenue directly to the northeast and south of the property affected by the zoning amendment. A similar zoning scheme exists in a number of the other areas shown on the zoning map, where the zoning boundaries and the property lines do not match up, which the commission did not seek to alter when it was altering this zoning scheme. There also was no policy or evidence

presented that there would be an effort undertaken by the commission so that all of the zoning boundaries would conform to property lines or that there was a public need for the change. This goes against the policy of uniformity and § 8-2. Further, because the overall zoning scheme of the area is a mixture of commercial, light industrial and residential properties, removing the light industrial zone from this portion of the area is not advancing the zoning scheme. The record does not reasonably support the actions of the commission, and the amendment constituted spot zoning and was, therefore, illegal.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiffs' appeal.

In this opinion the other judges concurred.