CIRO BENCIVENGA ET AL. *v.* CITY OF MILFORD ET AL.

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued November 5, 1980—decision released February 17, 1981

*Joseph D. Garrison,* for the appellants (plaintiffs).

*Andrew J. Broughel,* with whom were *Robert F. Shields* and, on the brief, *George F. Martelon, Jr.,* for the appellees (defendants).

ARTHUR H. HEALEY, J. This is an action seeking injunctive relief[1] brought by the plaintiffs, who are the owners of certain vacant properties in the defendant city of Milford, against the city, seeking to restrain it and certain of its officials from taking any action against them under the Milford Housing Code.[2] After a full hearing, the court dissolved the ex parte temporary injunction it had issued at the outset of the action, and denied permanent injunctive relief. The plaintiffs have appealed.

---

[1] The plaintiffs' complaint also sought damages, but that relief is not relevant to our disposition of this appeal.

[2] The Milford ordinance which is involved in this appeal is entitled "Housing Ordinance Regulating Supplied Facilities, Maintenance and Occupancy of Dwelling and Dwelling Units" enacted in 1963. For convenience, it will be referred to as the "Milford Housing Code."

In 1979, the defendant city undertook action, under the Milford Housing Code, against certain vacant properties owned by the plaintiffs. Proceeding under section 11[3] of that code, the city's health department inspected sixteen residential properties owned by the plaintiffs. The inspectors found violations of the code at each dwelling and so notified the plaintiffs. The notices advised the plaintiffs that their dwellings were posted as "Unfit for Occupancy," notified them of the specific violations at each dwelling, and ordered the plaintiffs to repair or demolish the dwelling within thirty days. The plaintiffs did not comply within the time provided in the notices, and the city sought arrest warrants for the plaintiffs under section 12[4] of the code. The

---

[3] The relevant parts of section 11 of the Milford Housing Code, entitled "Designation of Unfit Dwellings and Legal Procedure of Condemnation," provide:

"11.0 The designation of dwellings or dwelling units as unfit for human habitation and the procedure for the condemnation and placarding of such unfit dwellings or dwelling units shall be carried out in compliance with the following requirements:

"11.1 Any dwelling or dwelling unit which shall be found to have any of the following defects shall be condemned as unfit for human habitation and shall be so designated and placarded by the Director of Public Health:

"(a) One which is so damaged, decayed, dilapidated, unsanitary, unsafe or vermin-infested that it creates a serious hazard to the health or safety of the occupants or of the public.

"(b) One which lacks illumination, ventilation or sanitation facilities adequate to protect the health or safety of the occupants or of the public as prescribed by the provisions of this ordinance.

"(c) One which because of its general condition or location is unsanitary or otherwise dangerous to the health or safety of the occupants or of the public.

"11.2 Any dwelling or dwelling unit condemned as unfit for human habitation and so designated and placarded by the Director of Public Health, shall be vacated within a period of time as regulated by the State Statutes."

[4] Section 12 of the Milford Housing Code reads: "PENALTIES 12.0 Any person who shall violate any provision of this ordinance may upon conviction be punished by a fine of not more than one hundred

plaintiffs instituted the present action which sought to enjoin the city "from proceeding in any manner under the Milford Housing Code against the plaintiffs or with respect to any buildings owned by them or in which they have any interest." Their complaint alleged, inter alia, that the Milford Housing Code did not apply to their vacant dwellings, that the code was invalid and void in its entirety in that it was preempted by the State Building Code, adopted under General Statutes §§ 19-395 through 19-403, and that it was unconstitutional because of the lack of reasonably clear standards and of rules of procedure.[5]

This case reaches us in an unusual posture in the light of the pleadings and the trial court's determination under the claims of the parties. The trial court, as the judge of the credibility of the witnesses, found credible Dr. Bencivenga's testimony that she and her husband intended to fix up and use all their houses, including those sixteen concerning which the notices in question were received. Thus, having also determined that the houses involved were "dwellings" under section 2.3[6] of the Milford Housing Code, the court said that "there is no problem in the case about the theoretical application of the [Milford] Housing Code to vacant houses not intended

($100.) dollars, or by imprisonment for not more than thirty (30) days and, each day's failure to comply with any such provision shall constitute a separate violation."

[5] The city's claim that the plaintiffs' appeal is not properly before us because their administrative remedies have not been exhausted is without merit. Here, the plaintiffs are challenging the very validity of the ordinance itself and the city's jurisdiction to take action under it. See *Aaron* v. *Conservation Commission*, 178 Conn. 173, 178–79, 422 A.2d 290 (1979).

[6] Section 2.3 of the Milford Housing Code states that "DWELLING shall mean any building which is wholly or partly used or intended to be used for living or sleeping by human occupants."

to be used for human occupancy." It therefore concluded that it did "not have to pass on the question whether the [Milford] Housing Code is preempted by the State Building Code as to such vacant buildings."

The trial court was in error in not deciding the issue of preemption as it related to the plaintiffs' properties.[7] The plaintiffs had placed that issue squarely before the trial court. In fact, the city argued in its trial memorandum that "if the affected structures . . . are indeed, 'dwellings,' the Court must consider whether the pertinent sections of the [Milford] Housing Code are subject to preemption by the State Building Code." It should, however, be pointed out that the plaintiffs' complaint, fairly read, asks the invalidation of the Milford Housing Code in its entirety on the ground of preemption by the State Building Code, while in oral argument before us, the plaintiffs argued the invalidity of only sections 11 and 12 of the code.

Generally speaking, the Milford Housing Code and the State Building Code appear to deal with the same subject matter. When a statute and an ordinance which deal with the same subject matter conflict, the statute prevails. *Sheehan* v. *Altschuler,* 148 Conn. 517, 521, 172 A.2d 897 (1961); *State* v. *Gordon,* 143 Conn. 698, 706, 125 A.2d 477 (1956); *Shelton* v. *City of Shelton,* 111 Conn. 433, 438, 150 A. 811 (1930); see 6 McQuillin, Municipal Corporations (3d Ed. Rev.) § 21.32. The power of the city

---

[7] Here we use the term "preemption," as have the parties, to refer to the issue of whether the Milford Housing Code, to the extent it may or may not be found to be in conflict with or inconsistent with the state code, is superseded or is made void by the state code. See *Shelton* v. *City of Shelton,* 111 Conn. 433, 438, 150 A. 811 (1930).

to enact the ordinance which is the Milford Housing Code depends primarily upon whether it is in conflict with, or inconsistent with, the State Building Code. See *Shelton* v. *City of Shelton,* supra, 438. There is attached to every ordinance, charter or resolution adopted by or affecting a municipality the implied condition that these must yield to the predominant power of the state when that power has been exercised. See 6 McQuillin, op. cit., § 21.32. This is in keeping with our law that a municipality, as a creature of the state "can exercise only such powers as are expressly granted it or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation." *New Haven Water Co.* v. *New Haven,* 152 Conn. 563, 566, 210 A.2d 449 (1965); see *Baker* v. *Norwalk,* 152 Conn. 312, 314, 206 A.2d 428 (1965); *Bredice* v. *Norwalk,* 152 Conn. 287, 292, 206 A.2d 433 (1964); *Ingham* v. *Brooks,* 95 Conn. 317, 328–29, 111 A. 209 (1920).

Brief reference to certain provisions of the State Building Code and the Milford Housing Code serves to indicate that the trial court should have decided the preemption claim. For purposes of our disposition of this appeal, we emphasize that we do not undertake any detailed analysis of these two codes. We make no conclusions with regard to the issue of preemption and only discuss the two codes in general terms to illustrate our conclusion that the trial court erred in not deciding the issue.[8]

The purpose of the Milford Housing Code as set out in section 1 is "to insure safe, sanitary and

---

[8] We say this to caution the trial court that, upon a new trial, our opinion in this case is not to be construed as in any way suggesting that the two codes are incompatible.

decent housing" and it "applies to every structure used for living purposes." Section 19-395-100.0 of the regulations of the State Building Code, or Basic Code, which is entitled "Scope," provides in part: "[the regulations] shall control all matters concerning the construction, alteration, addition, repair, removal, demolition, use, location, occupancy and maintenance of all buildings and structures . . . except as such matters are required to be otherwise controlled by provision of the General Statutes, or the further rules and regulations authorized for promulgation under the provisions of the Basic Code."

The orders directed to the plaintiffs' properties under the Milford Housing Code ordered that they be repaired or, failing that, be demolished. The trial court specifically found that the Milford Housing Code "does not authorize demolition" but that "demolition would seem to be a logical course to follow to correct any violations specified." The State Building Code, § 19-395-124.1 entitled "Right of Condemnation" provides: "All buildings or structures that are or hereafter shall become unsafe, unsanitary, or deficient in adequate exitway facilities, or which constitute a fire hazard, or are otherwise dangerous to human life or the public welfare, or which by reason of illegal or improper use, occupancy or maintenance, shall be deemed unsafe buildings or structures. All unsafe buildings shall be taken down and removed or made safe and secure, as the building official may deem necessary and as provided in this section. A vacant building, unguarded or open at door or window, shall be deemed a fire hazard and unsafe within the meaning of the Basic Code." Section 19-395-124.3 of the State Code provides for notification to the owner

of a building or structure deemed unsafe of the specific repairs to be made or the demolition that may also be ordered. Section 12 of the Milford Housing Code provides that: "Any person who shall violate any provision of this ordinance may upon conviction be punished by a fine of not more than one hundred ($100.) dollars, or by imprisonment for not more than thirty (30) days and, each day's failure to comply with any such provision shall constitute a separate violation." The State Building Code, however, does not specifically provide criminal sanctions[9] for property owners, but provides that the building official may, after notification to the property owner and refusal or neglect by the owner to comply with the order, cause the required repairs or demolition to be done at the owner's expense. See State Building Code Regulations § 19-395-124.6.

These examples demonstrate at least some apparent conflicts which required that the trial court reach and resolve the issue of preemption. Without having disposed of this threshold question, the factual determination that the court did make under the Milford Housing Code in its disposition of the case cannot stand. This is so because the validity of the very ordinance itself, i.e., the Milford Housing Code, was frontally attacked on the ground of

---

[9] Section 19-395-122.3 of the State Building Code provides: "Each town, city and borough is requested to prescribe by ordinance that any person who shall violate a provision of the Basic Code or shall fail to comply with any of the requirements thereof or shall erect, construct, alter or repair a building or structure in violation of any approved plan or directive of the building official, or of a permit or certificate issued under the provisions of the Basic Code shall be guilty of a misdemeanor, punishable by a fine of not more than $500 or by imprisonment not exceeding one (1) year, or both such fine and imprisonment. Each day that a violation continues shall be deemed a separate offense."

preemption,[10] and, therefore, that issue had to be resolved before the case could be disposed of below, even on the factual basis of credibility of testimony, under the Milford Housing Code.

Where a court erroneously fails to adjudicate an issue, the proper judgment ordinarily is to remand the case so that the court may adjudicate the issue. *Alderman* v. *Hanover Ins. Group,* 155 Conn. 585, 591, 236 A.2d 462 (1967); *Cochran* v. *McLaughlin,* 128 Conn. 638, 644, 24 A.2d 836 (1942). In this case, we agree with both counsel that the issue of preemption should first be ruled upon by the trial court since " '[w]hether the legislature has undertaken to occupy exclusively a given field of legislation is to be determined in every case upon an analysis of the statute, and of the facts and circumstances upon which it intended to operate.' " 6 McQuillin, Municipal Corporations (3d Ed. Rev.) § 21.34.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.

---

[10] Although the plaintiffs' complaint also alleged that the provisions of the Milford Housing Code were invalid under the fourteenth amendment to the United States constitution for failure to establish certain reasonably clear and adequate standards, we note that claim was not claimed in the plaintiffs' preliminary statements of issues, and was not briefed. That claim, therefore, is not part of this appeal. See *Jones* v. *Civil Service Commission,* 175 Conn. 504, 505, 400 A.2d 721 (1978).