******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MSW ASSOCIATES, LLC *v.* PLANNING & ZONING DEPARTMENT OF THE CITY OF DANBURY
## (AC 43052)

Lavine, Suarez and Devlin, Js.*

*Syllabus*

The defendant Planning and Zoning Department of the City of Danbury appealed from the judgment of the trial court sustaining the appeal filed by the plaintiff property owner. The plaintiff, which had been issued a permit to construct and operate a solid waste transfer station and volume reduction plant on its property by the Commissioner of Energy and Environmental Protection, filed a site plan with the defendant, which the defendant denied. The plaintiff appealed to the trial court alleging that the defendant acted arbitrarily, capriciously, unlawfully, and in abuse of its discretion when it determined the site plan was not a use permitted by the city's zoning regulations, and that its site plan denial was in violation of the statute (§ 22-208b (b)) providing that no zoning regulation shall have the effect of prohibiting the construction and operation of a volume reduction plant and transfer station. The court sustained the plaintiff's appeal and remanded the case with direction to grant the site plan, and the defendant appealed to this court. *Held*:

1. The trial court did not err by holding that the regulations' limitation of solid waste facilities only to those in a certain zone and in existence as of a certain date violated § 22a-208b (b); this court's examination of the regulations persuaded it that the regulations do not permit a new transfer station or other type of solid waste facility anywhere in the city, in effect, prohibiting the construction, alteration, or operation of solid waste facilities and, as such, they did not conform to the strictures of § 22a-208b (b).

2. The defendant could not prevail on its claim that the plaintiff lacked standing to claim a violation of § 22a-208b (b) on the basis of allegations that the regulations failed to allow solid waste facilities other than the specific subtype of facility it sought to construct on its property: the plaintiff did not seek to have the regulations invalidated, it merely sought to have the court order the defendant to approve the site plan that complied with regulations related to industrial uses in the zone as required by § 22a-208b (b); moreover, the plaintiff was aggrieved by the defendant's denial of the site plan and there was an actual controversy at issue; furthermore, the court did not invalidate the regulations, rather, it held that the ground on which the defendant denied the site plan, that a volume reduction plant and transfer station was not a permitted use in the zone, did not withstand judicial scrutiny pursuant to § 22a-208b (b).

Argued October 13, 2020—officially released February 23, 2021

*Procedural History*

Appeal from the decision of the defendant denying the plaintiff's site plan application, brought to the Superior Court in the judicial district of Danbury, where the matter was transferred to the judicial district of Hartford, Land Use Litigation Docket; thereafter, the matter was transferred to the judicial district of New Britain; subsequently, the matter was tried to the court, *Hon. Stephen F. Frazzini*, judge trial referee; judgment sustaining the appeal, from which the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Daniel E. Casagrande*, for the appellant (defendant).

*Kenneth R. Slater, Jr.*, with whom was *Ann M. Cat-*

*ino*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. This zoning appeal concerns the conflict that sometimes arises between the state's authority to regulate solid waste management[1] and a municipality's right to regulate the structures and land use within its borders.[2] The plaintiff, MSW Associates, LLC, filed a site plan application (site plan) to construct and operate a solid waste transfer station and volume reduction plant[3] in Danbury (city) that was denied by the defendant, the Planning and Zoning Department of the City of Danbury. The plaintiff appealed to the Superior Court pursuant to General Statutes § 8-8.[4] The Superior Court sustained the plaintiff's appeal. Thereafter, this court granted the defendant's petition for certification to appeal.

On appeal before us, the defendant claims that the trial court erred by (1) construing General Statutes § 22a-208b (b)[5] to require it to approve the site plan even though the use is prohibited in the IG-80 zone in which it was proposed and when the city's zoning regulations (regulations) permit other types of solid waste facilities at other locations in the city, (2) ruling that the regulations "have the effect of prohibiting the construction, alteration or operation of solid waste facilities within the limits" of the city and thus violate § 22a-208b (b), (3) refusing to invoke the doctrine of primary jurisdiction to remand the case to the city's zoning commission,[6] and (4) disregarding the language of § 22a-208b (b) that "[n]othing in this chapter shall be construed to limit the right of a municipality to regulate, through zoning, land usage for an existing or new solid waste facility," and by ordering it to approve the site plan in a particular location and zone, thereby usurping the legislative authority of the zoning commission. The defendant also claims that the plaintiff lacks standing to claim a violation of § 22a-208b (b) on the basis of allegations that the regulations fail to allow solid waste facilities other than the specific subtype of facility that it seeks to construct on its property. We agree with the court that the plain language of § 22a-208b (b) bars zoning regulations from having the effect, as the city's do, of prohibiting construction of solid waste facilities of any type within its borders. We, therefore, affirm the judgment of the trial court.

The following facts underlie the present appeal. The plaintiff is the owner of property at 14 Plumtrees Road in the city (property). In February, 2017, pursuant to General Statutes § 22a-208a (a),[7] the Commissioner of Energy and Environmental Protection (commissioner) issued a permit to the plaintiff to construct and operate a solid waste transfer station and volume reduction plant on its property.[8] On August 15, 2017, the plaintiff filed with the defendant a site plan to construct a volume reduction plant and waste transfer station on its property. The defendant denied the site plan on October

12, 2017, stating "[i]n accordance with section 6.B of the Zoning Regulations, a volume reduction plant and transfer station is not a permitted use in the IG-80 Zoning District."

Pursuant to § 8-8, the plaintiff timely filed an appeal to the Superior Court that sounded in two counts. In count one, the plaintiff alleged that the defendant acted arbitrarily, capriciously, unlawfully, and in abuse of the discretion vested in it by, among other things, denying the site plan as a use not permitted by the regulations when that denial is in direct violation of § 22a-208b (b), which provides that no Connecticut zoning regulation shall have the effect of prohibiting the construction and operation of a volume reduction plant and transfer station.[9] The plaintiff also alleged that the site plan complied with all of the requirements applicable to uses permitted in the zone.[10] The plaintiff asked the court to sustain its appeal and to order the defendant to approve its site plan.

The defendant responded, representing that one transfer station and one volume reduction facility existed at 307 White Street (White Street) in the city before a 2007 amendment to the regulations prohibited the construction of transfer stations in the city and before the General Assembly enacted § 22a-208b. The defendant argued that it was entitled to apply the regulations to prohibit the construction of a solid waste facility anywhere else in the city and, therefore, to deny the plaintiff's site plan. In May, 2018, before trial, the court and counsel for the parties visited the property. Trial was held on July 31, 2018, and the court issued a detailed memorandum of decision on February 26, 2019, sustaining the plaintiff's appeal and ordering the defendant to grant the plaintiff's site plan.

In its memorandum of decision, the court stated its findings of fact and legal conclusions as follows. The court began its decision by quoting the defendant's reason for denying the site plan, i.e., "a volume reduction plant and transfer station is not a permitted use in the IG-80 zoning district." (Internal quotation marks omitted.) The court then noted that under a permissive zoning scheme such as the one employed by the city,[11] "[a]ny use which is not specifically permitted is automatically excluded." *Gada* v. *Zoning Board of Appeals*, 151 Conn. 46, 48, 193 A.502 (1963).

The court found that the solid waste facility that the plaintiff proposed was to be located in the city's general industrial zone, IG-80. As of the date the defendant denied the site plan, the city's regulations permitted only one type of solid waste facility in IG-80, namely, wood waste processing.[12] The regulations provide that a transfer station that has been in existence since before October 15, 2007, is a use permitted by special exception in the IL-40 light industrial zone. See footnote 12 of this opinion. Until 2007, transfer stations also were a

permitted use by special exception in the IG-80 zone.[13]

In 1985, the commissioner issued a permit for a "solid waste resource recovery and recycling facility" at White Street in the IL-40 zone, and a "solid waste resource recovery and recycling facility" has been in operation at White Street since approximately 1986. (Internal quotation marks omitted.) In 1993, the commissioner issued permits to construct and operate a solid waste transfer station and solid waste volume reduction plant at White Street. As of October 15, 2007, White Street had been used as a transfer station, volume reduction facility, and intermediate processing (recycling) center. White Street has been operated by Winter Bros. Transfer Station of CT, LLC (Winter Bros.), since 2011. In 2012, the city's planning commission approved a revised site plan authorizing Winter Bros. to demolish two buildings and to construct a new 20,720 square foot building at White Street. In 2014, the planning commission approved another revised site plan authorizing Winter Bros. to demolish a third building and to construct a replacement at White Street. The record before the court did not reveal whether the 2012 or the 2014 revised site plans expanded the overall size of White Street.

In addition, the court found that in 2004, Ferris Mulch Products, LLC (Ferris Mulch), filed a site plan application to operate a wood waste and brush recycling facility at 6 Plumtrees Road.[14] The defendant approved Ferris Mulch's site plan in 2005, and the facility has been in operation since that time. As of at least August 18, 2014, the commissioner has permitted Ferris Mulch to operate a solid waste volume reduction plant at 6 Plumtrees Road.

After making the foregoing factual findings, the court turned to the question the plaintiff raised in its appeal, i.e., whether the regulations have the effect prohibited by the second sentence of § 22a-208b (b), that is that "[n]o municipal regulation adopted pursuant to [General Statutes § 8-2] shall have the effect of prohibiting the construction, alteration or operation of solid waste facilities within the limits of a municipality." The court noted that § 22a-208b (b) was enacted in its present form in No. 12-2 of the 2012 Public Acts (P.A. 12-2), in response to *Recycling, Inc.* v. *Milford*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-10-6002308-S (November 2, 2010) (50 Conn. L. Rptr. 866). In *Recycling, Inc.*, the court, *Hiller, J.*, held that in 2006, the General Assembly repealed the state law permitting local zoning authorities to regulate solid waste facilities other than "facilities for the land disposal of solid waste, i.e., landfills." Id., 870. (Internal quotation marks omitted.) Judge Frazzini found that the General Assembly's enactment of P.A. 12-2 reinstated the law that had existed since 1978, which permitted local zoning bodies to regulate all types of solid waste facilities. See id., 867–68.

Judge Frazzini also found that since at least 1977, courts in this state have recognized that "solid waste management [is] a problem of [statewide] magnitude," and that " '[t]he General Assembly has enacted a rather comprehensive [statewide] solid waste management program, to be administered by the commissioner . . . .' " *Colchester* v. *Reduction Associates, Inc.*, 34 Conn. Supp. 177, 180, 382 A.2d 1333 (1977). "The General Assembly has seen fit to exercise its own power of regulation of solid waste management in this state. To be sure, the General Assembly may allow localities to make additional provisions and otherwise further to control the disposal of solid waste located within their boundaries." Id., 183. The court noted that zoning, a limitation on property rights, is an exercise of the state's police power that derives from and must comply with its statutory authority and purposes. See, e.g., *Builders Service Corp.* v. *Planning & Zoning Commission*, 208 Conn. 267, 275, 545 A.2d 530 (1988); *State* v. *Hillman*, 110 Conn. 92, 100, 147 A. 294 (1929); *Windsor* v. *Whitney*, 95 Conn. 357, 367, 111 A. 354 (1920). The court, therefore, concluded that the zoning authority exercised by the defendant must be construed in the context of the limitations imposed by § 22a-208b (b).

At trial, the plaintiff argued that the city was in violation of § 22a-208b (b) because the regulations do not list solid waste facilities as a permitted use in any zone in the city. The defendant countered that the existence of the Winter Bros. and Ferris Mulch facilities, the zoning regulations that permit wood waste processing in the IG-80 zone, and transfer stations in existence before 1985 in the IL-40 zone demonstrate that solid waste facilities are allowed in some zones in the city, thereby establishing the city's compliance with the strictures of § 22a-208b (b).

The court reviewed the regulations and found that they allow for the construction and operation of one type of solid waste reduction facility in the IG-80 zone, specifically wood waste processing. As of May 15, 2017, the regulations also permitted rock crushing in the IG-80 zone. Nonetheless, the court concluded that, even if rock crushing is considered volume reduction within the meaning of the Solid Waste Management Act, the 2017 amendment of the regulations did not affect its analysis that under the regulations, no other type of volume reduction facility is permitted to be constructed or operated anywhere in the city. Although White Street contains a volume reduction plant, that function is not included in the regulations as a use by special exception and continues to exist by virtue of § 8-2, which provides in relevant part that zoning "regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations . . . ." The regulations also permit transfer stations that existed in the IL-40 zone before

October, 1985, but the regulations do not permit construction of *new* transfer stations anywhere in the city.

The court then turned to the statute, quoting the second sentence of § 22a-208b (b) that forbids municipal regulations that "have the effect of prohibiting the construction, alteration or operation of solid waste *facilities* . . . ." (Emphasis in original.) The court identified the principal question posed by the plaintiff's appeal: "Whether municipal regulations that *permit* construction and operation of only one type of solid waste facility, a volume reduction plant for wood waste processing, *prohibit* construction of any type of transfer station, and prohibit operation of any transfer station not already in existence as of October, 2007, comply with" § 22a-208b (b). (Emphasis added.) In answering the question in the negative, the court was mindful of the canons of statutory construction.[15]

The court determined that the regulations "prohibit construction of a transfer station anywhere in the city and the construction and operation of most types of volume reduction plants, specifically those unrelated to wood waste processing anywhere in the city. By virtue of § 22a-208b (b), construction of 'solid waste facilities' must be allowed somewhere within the city . . . . The . . . regulations do not allow construction of all subtypes of solid waste facilities. The plain language of § 22a-208b (b) shows, however, that the statute encompasses all subtypes listed in the statutory definition of 'solid waste facility,' which includes '*any* solid waste disposal area' including volume reduction plants and transfer stations. . . . [See General Statutes] § 22a-207 (4). If the legislature had intended to allow a municipality to exclude any of these facilities from the reach of § 22a-208b (b), the language of P.A. 12-2 would have so indicated. By contrast, subsection (a) of § 22a-208b, addressing only facilities 'for the land disposal of solid waste,' shows that when the legislature intends to apply the solid waste laws to only one type of solid waste facility, it does so expressly and not by implication. Instead, subsection (b) of [§ 22a-208b, which is] at issue in [the present] case, forbids prohibiting construction of any type of operation or enterprise fitting within the ambit of the term 'solid waste facility.' Subsection (b) allows a municipality to use zoning laws 'to regulate . . . land usage for an existing or new solid waste facility' so long as the laws do not have 'the effect of prohibiting construction, alteration or operation of solid waste facilities within the limits of a municipality.'" (Emphasis in original; footnote omitted.) See *Neighborhood Assn., Inc.* v. *Limberger*, 321 Conn. 29, 39, 136 A.3d 581 (2016) (statutes must be construed such that no clause, sentence, or word is superfluous, void, or insignificant). The court stated that interpreting the language of the statute otherwise would not be reasonable or rational. See *State* v. *Courchesne*, 296 Conn. 622, 710, 998 A.2d 1 (2010) (those who promulgate statutes

do not intend absurd results).

The defendant, however, argued that the fact that the regulations allow transfer stations that existed as of October, 2007, within the IL-40 zone means that the regulations do not run afoul of § 22a-208b (b). The court rejected the argument, stating that under the regulations, no owner of other property in the IL-40 zone may construct or operate a transfer station. Although such a provision may not violate the uniformity requirement of § 8-2 (a); see *Roncari Industries, Inc.* v. *Planning & Zoning Commission*, 281 Conn. 66, 82–83, 912 A.2d 1008 (2007) (*Roncari*); the regulations allowing within the IL-40 zone only transfer stations in existence as of October, 2007, prohibit by implication the construction of any transfer stations after that date, as well as the operation of such newly constructed facilities, all in contravention of the plain language of § 22a-208b (b). Under § 22a-208b (b), zoning regulations may not have the effect, as do the regulations in the present case, of prohibiting the construction of solid waste facilities or the operation of such facilities.

The court continued, stating: "Moreover, 'it is axiomatic that those who promulgate statutes . . . do not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results.' " . . . *State* v. *Courchesne*, [supra, 296 Conn. 710]. "The law prefers rational and prudent statutory construction, and we seek to avoid interpretations of statutes that produce odd or illogical outcomes." *State* v. *George J.*, 280 Conn. 551, 574–75, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007). The court reasoned that "[i]t would make little sense and would yield a bizarre result if the [regulations] could not prohibit operation of a solid waste facility, because such a prohibition would have the effect barred by § 22a-208b (b), but could nonetheless prohibit" construction of such a facility. Although the court found that the language of § 22a-208b (b) is clear and unambiguous and encompasses all types of solid waste facilities, the court nonetheless reviewed the legislative history, which it found instructive.[16]

On the basis of its review of the legislative history of P.A. 12-2, the court concluded that "the legislative history supports a broad construction of the second sentence of § 22a-208b (b) as barring zoning laws from prohibiting construction or alteration or operation of any type of a solid waste facility. The statute gives towns the right to regulate solid waste facilities—where they may be located, etc., but not to bar any type of them. Allowing construction of only a leaf mulching facility, for example, would not relieve a [municipality] from the prohibition of that statute . . . . The statutes describe and define many types of solid waste facilities, and permitting only one of those types has the effect prohibited by § 22a-208b (b) of excluding other types.

. . . [A]llowing construction of only one subset of one type of solid waste facilities in the IG-80 zone and not allowing construction of a transfer station anywhere in the city [does] not comport with the language of § 22a-208b (b) or the legislative intent behind that statute."[17] (Footnotes omitted.)

In its conclusion, the court stated that "[t]he defendant denied the plaintiff's site plan . . . on the grounds that 'a volume reduction plant and transfer station is not a permitted use in the IG-80 zoning district.' The reason thus stated is, in effect, an admission that permitting one subset (wood waste processing) of one type (a volume reduction plant) of solid waste facility does not mean that the zoning regulations permit volume reduction plants in that zone. More importantly, the [regulations] applied by the [defendant] when it denied the . . . site plan . . . 'have the effect of prohibiting the construction . . . of solid waste facilities' throughout [the city] contrary to the mandate of § 22a-208b (b). The plain language of that statute prohibits [municipalities] from using their zoning regulations to prevent construction of transfer stations and all types of volume reduction plants, as the [regulations] do. Although [the regulations] may be permissive in nature, they also cannot have the effect of prohibiting construction of *any* type of solid waste facility throughout the entire [city], or of then prohibiting operation of such facilities. In the face of [§ 22a-208b (b)], the defendant's reason for denying the . . . site plan . . . cannot withstand judicial scrutiny." (Emphasis added; footnotes omitted.) The court, therefore, sustained the plaintiff's appeal and remanded the case with direction to grant the site plan.

Thereafter, on March 15, 2019, the defendant filed a petition for certification to appeal to this court. The defendant's principal claim was that the court improperly construed § 22a-208b (b) to require it to grant the site plan "even though the use is prohibited in the IG-80 . . . zone . . . in which it was proposed, and when [the regulations] permit other types of solid waste facilities at other locations in the city." This court granted the petition on May 22, 2019.

I

The defendant has briefed several interrelated claims; we will address them together.[18] The defendant claims that the court erred by holding that (1) the regulations' limitation of transfer station facilities only to those in the IL-40 zone and in existence as of October 15, 2007, violates § 22a-208b (b), (2) the rights that White Street enjoys as a prior nonconforming use do not limit its status as a permitted special exception use, and (3) the regulations have the effect of prohibiting throughout the city the construction, alteration or operation of the type of transfer station/volume reduction facility that the plaintiff desires to build. We disagree.

We begin with a brief review of the history of zoning and solid waste management law in this state to provide context for this appeal. Our review demonstrates that these two areas of law have not always worked together seamlessly. Of principal importance is the fact that "a municipality, as a creature of the state can exercise only such powers as are expressly granted it or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation." (Internal quotation marks omitted.) *Bencivenga* v. *Milford*, 183 Conn. 168, 173, 438 A.2d 1174 (1981). Connecticut municipalities have no inherent powers of their own. *Capalbo* v. *Planning & Zoning Board of Appeals*, 208 Conn. 480, 490, 547 A.2d 528 (1988). "There is attached to every ordinance, charter or resolution adopted by or affecting a municipality the implied condition that these must yield to the predominant power of the state when that power has been exercised." *Bencivenga* v. *Milford*, supra, 173. "[A] local ordinance is preempted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter . . . or . . . whenever the local ordinance irreconcilably conflicts with the statute." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 232, 662 A.2d 1179 (1995). "[W]hether the legislature has undertaken to occupy exclusively a given field of legislation is to be determined in every case upon an analysis of the statute, and of the facts and circumstances upon which it intended to operate." (Internal quotation marks omitted.) *Bencivenga* v. *Milford*, supra, 176.

The General Assembly can delegate the authority of the state to municipalities, particularly for local matters and including land use. See *Bottone* v. *Westport*, 209 Conn. 652, 658, 553 A.2d 576 (1989). "[Z]oning authorities can only exercise such power as has been validly conferred upon them by the General Assembly." (Internal quotation marks omitted.) *Capalbo* v. *Planning & Zoning Board of Appeals*, supra, 208 Conn. 490. The General Assembly enacted the first land use laws in 1917, which permitted "municipalities to form planning commissions, with limited powers." 9 R. Fuller, Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 1:1, p. 2. "In 1925, the legislature passed a zoning enabling act, which applied to all Connecticut municipalities . . . ." Id. Zoning, planning, and other land use ordinances are based on valid delegations of authority from the state, but regulation must be exercised in accordance with the grant of authority given by the statute. In deciding whether a power exists, the question is whether there is statutory authority for the enactment, not whether there is a statutory prohibition against it. *Capalbo* v. *Planning & Zoning Board of Appeals*, supra, 490; see also 9 R. Fuller, supra, § 1:1, pp. 3–4.

Since approximately 1977, the courts of this state have recognized that "solid waste management [is] a problem of [statewide] magnitude," and that "[t]he General Assembly has enacted a rather comprehensive [statewide] solid waste management program, to be administered by the commissioner . . . ." *Colchester* v. *Reduction Associates, Inc.*, supra, 34 Conn. Supp. 180. The statutory scheme is codified in title 22a of the General Statutes, titled Environmental Protection. Section 22a-208b (b) is in chapter 446d of title 22a, and is titled "Zoning approval of disposal areas. Municipal authority re land usage for solid waste facilities. *Limitations*." (Emphasis added.) The language of the first solid waste management statutes and the circumstances surrounding their enactment "indicate that the legislature did not intend to occupy the entire field of regulation with regard to solid waste facilities. That section expressly provides in part that nothing in this chapter . . . shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 233. Consequently, local zoning laws are preempted only to the extent that they conflict with permits issued by the commissioner. See *Beacon Falls* v. *Posick*, 212 Conn. 570, 579, 563 A.2d 285 (1989). When, however, local zoning regulations irreconcilably conflict with a state statute, the local regulation is preempted. See *Dwyer* v. *Farrell*, 193 Conn. 7, 14, 475 A.2d 257 (1984). "Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 232.

With this background, we now turn to the defendant's claim, which requires us to construe § 22a-208b (b), the regulations, and the court's memorandum of decision. We "construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the result that the legislature sought to achieve." (Internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 31 n.26, 717 A.2d 77 (1998). "In seeking to determine [the] meaning [of a statute we] . . . first . . . consider the text of the statute . . . itself and its relationship to other statutes . . . . If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence . . . shall not be considered." (Citations omitted; internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 594, 181 A.3d 550 (2018).

"We recognize that terms [used] are to be assigned their ordinary meaning, unless context dictates otherwise." (Internal quotation marks omitted.) Id.

"Administrative rules and regulations are given the force and effect of law. . . . We therefore construe agency regulations in accordance with accepted rules of statutory construction." (Internal quotation marks omitted.) *Colonial Investors, LLC* v. *Furbush*, 175 Conn. App. 154, 169, 167 A.3d 987, cert. denied, 327 Conn. 968, 173 A.3d 953 (2017). The interpretation of statutes and regulations is a question of law over which our review is plenary. *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 594. "The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment." (Internal quotation marks omitted.) *Moasser* v. *Becker*, 107 Conn. App. 130, 135, 946 A.2d 230 (2008).

Section 22a-208b (b) provides in relevant part: "Nothing in this chapter . . . shall be construed to limit the right of a municipality to *regulate*, through zoning, land usage for an existing or new solid waste facility. No municipal regulation adopted pursuant to section 8-2 shall have the effect of prohibiting the construction, alteration or operation of solid waste facilities within the limits of a municipality." (Emphasis added.) By its plain terms, the first sentence of § 22a-208b (b) enables municipalities to *regulate* through zoning land usage for existing or new solid waste facilities. The plain terms of the second sentence of the statute, however, provide that no zoning regulation shall have the effect of *prohibiting* the construction, alteration or operation of solid waste facilities within the municipality.

As a creation of the state, a municipality can exercise only those powers expressly granted to it. *Bencivenga* v. *Milford*, supra, 183 Conn. 173. We, therefore, look to § 8-2 (a), the statute that grants municipalities their zoning authority, to determine what municipalities may regulate. In doing so, we are mindful that General Statutes § 1-2z provides that we are to consider the text of the statute itself and its relationship to other statutes. "[T]he legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter . . . ." (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003).

Section 8-2 (a) provides in relevant part that "[t]he zoning commission of each city . . . is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location

and use of buildings, structures and land for trade, industry, residence or other purposes, including water-dependent uses . . . . Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district . . . . Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations or require a special permit or special exception for any such continuance. . . .''

Our plenary review of § 8-2 (a) discloses that it grants a municipality authority to regulate, among other things, the height, size, setbacks, and location of structures; it does not, however, grant a municipality the authority to prohibit the construction, alteration or operation of a solid waste facility within its borders. ''We are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words . . . .'' (Internal quotation marks omitted.) *Bank of New York* v. *National Funding*, 97 Conn. App. 133, 140–41, 902 A.2d 1073, cert. denied, 280 Conn. 925, 908 A.2d 1087 (2006), cert. denied sub nom. *Reyad* v. *Bank of New York*, 549 U.S. 1265, 127 S. Ct. 1493, 167 L. Ed. 2d 229 (2007).

''The word regulate has been defined as to prescribe the rule by which commerce is to be governed. . . . The power to regulate, however, entails a certain degree of prohibition. . . . The word regulate implies, when used in legislation, the bringing under the control of constituted authorities the subject to be regulated. . . . It infers limitations.'' (Citations omitted; internal quotation marks omitted.) *Blue Sky Bar, Inc.* v. *Stratford*, 203 Conn. 14, 20, 523 A.2d 467 (1987). ''[T]he power to regulate, however, does not necessarily imply the power to prohibit absolutely any business or trade, as the very essence of regulation, which infers limitations, is the continued existence of that which is regulated. Prohibition of an incident to or particular method of carrying on a business is not prohibition, but rather it is merely regulation.'' (Internal quotation marks omitted.) Id., 20–21.

Sections 8-2 (a) and 22a-208b (b) are part of a coordinated statutory whole. When properly employed, zoning regulations work in tandem with the state's preemption of solid waste management in the state, as demonstrated in *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 221. In *Bauer*, the owner of a landfill in New Milford appealed the town zoning com-

mission's adoption of height limitations on landfills in New Milford. Id., 226–27. The landowner originally received a permit from the commissioner to operate a landfill to a maximum height of ninety feet. Id. The owner of the landfill later applied for a permit from the commissioner allowing it to operate a landfill to a maximum of 190 feet. Id. The New Milford zoning commission amended its regulations limiting the height of landfills to a maximum of ninety feet. Id., 227. The owner of the landfill claimed in its appeal that the reservation of powers to local zoning authorities in what is now § 22a-208b was not applicable to another subsection. Id., 234. Our Supreme Court disagreed with the landowner and read the statute to mean that "the zoning authority of a town may be brought to bear on solid waste facilities located within its borders." Id. It did not "suggest that regulation beyond permissible zoning authority would not be preempted by the solid waste management chapter of the [G]eneral [S]tatues . . . ." Id., 234–35. Nor did it "suggest that land use regulation through zoning that is in conflict with state statutes and regulations is permissible. A height restriction, however, does not go beyond New Milford's zoning authority." Id., 235. The Supreme Court was not convinced that the New Milford height restriction was preempted because it irreconcilably conflicted with the statute or the permit itself. "Compliance with the [zoning commission's] maximum height of ninety feet a fortiori implies compliance with [the commissioner's] authorized maximum height of 190 feet. [The owner of the landfill would have our Supreme Court] read the [commissioner's] permit to authorize the landfill to reach the 190 foot limit; rather [the Supreme Court understood] the permit to allow the landfill to go no higher than 190 feet, but to allow any level below that. In this sense, [the commissioner's] permit is prohibitory and the height limitation imposed by the [zoning commission], therefore, merely goes further in its prohibition than the [commissioner's] permit." (Emphasis omitted.) Id., 235–36.

In the present case, our examination of the regulations persuades us that they do not permit a new transfer station anywhere in the city, in effect, prohibiting the construction, alteration or operation of solid waste facilities. We agree with the trial court's determination that the regulations permit the construction and operation of one type of solid waste reduction facility, wood waste processing, in the IG-80 zone. The regulations, however, permit no other type of volume reduction facility to be constructed or operated anywhere in the city. Although White Street contains a volume reduction facility, that function is not included in the zoning regulations as a use by special exception. It exists by virtue of § 8-2, which provides in relevant part that zoning regulations "shall not prohibit the continuance of any nonconforming use, building or structure existing at

the time of the adoption of such regulations . . . ." The regulations also permit transfer stations existing before October, 1985, in the IL-40 zone, but the regulations do not permit construction of a new transfer station anywhere in the city. We conclude, therefore, that because the regulations do not permit the construction or operation of a *new* transfer station or other type of solid waste facility in the city, the regulations do not conform to the strictures of § 22a-208b (b).

The defendant relies on *Roncari*, supra, 281 Conn. 66, to support its position that a zoning commission has the power to limit uses allowed in a zone to those existing on a specific date.[19] Although that proposition is an accurate statement with respect to zoning law generally, it has no application in the present case. First, *Roncari* concerns the legislative authority of a municipal planning and zoning commission, unlike the defendant's function to review site plans to determine whether they conform to the regulations. "In ruling upon a site plan application, the planning commission acts in its ministerial capacity, rather than its quasi-judicial or legislative capacity. It is given no independent discretion beyond determining whether the plan complies with the applicable regulations." (Internal quotation marks omitted.) *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission,* 76 Conn. App. 199, 221, 821 A.2d 269 (2003). More obviously, *Roncari* did not concern a solid waste management facility, but rather a site plan for valet parking along a highway in Windsor Locks. *Roncari,* supra, 68. The regulations at issue in *Roncari* did not come within the ambit of § 22a-208b (b). *Roncari* is purely a zoning case and the zoning principles articulated therein are not applicable in the present case in which § 22a-208b (b) controls the extent to which the city may exercise its zoning authority over solid waste facilities.

We do not disagree with the defendant's claim that White Street, as a prior nonconforming use, does not limit its status as a permitted special exception use. But we do agree with the plaintiff's position that White Street's status as a preexisting transfer station is not relevant to the trial court's determination that the regulations under which the defendant denied the plaintiff's site plan do not permit the construction and operation of a *new* waste management facility, unless it is related to the production of mulch, anywhere in the city. The defendant's claim is without merit

The defendant also claims, referring to one sentence in the court's memorandum of decision, that the court erred by ruling that the regulations have the effect of prohibiting the volume reduction component of White Street. The defendant has misconstrued the court's analysis. The referenced sentence states: "Although the Winter Bros. facility contains a volume reduction plant, that function is not included in the zoning regulations

as a use by special exception and continues to exist by virtue of . . . § 8-2, which provides in relevant part that '[zoning] regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. . . .'" That sentence merely means that the regulations do not permit the construction, alteration or operation of any *new* solid waste facility in the city. Preexisting solid waste facilities are protected by § 8-2. The defendant denied the site plan because "a volume reduction plant and transfer station is not a permitted use in the IG-80 Zoning District." The regulations do not permit the construction, alteration or operation of any *new* solid waste reduction facility in the city and, therefore, solid waste facilities that exist in the city pursuant to § 8-2 are not relevant to the issue before us.

## II

The defendant asserts that the plaintiff lacks standing to claim a violation of § 22a-208b (b) on the basis of allegations that the regulations fail to allow solid waste facilities other than the specific subtype of facility it seeks to construct on the property.[20] We do not construe the plaintiff's allegations as making such a claim.

"[A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the right to set judicial machinery in motion." (Citation omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002). "It is axiomatic that aggrievement is a basic requirement of standing . . . ." (Internal quotation marks omitted.) *Trikona Advisers Ltd.* v. *Haida Investments Ltd.*, 318 Conn. 476, 485, 122 A.3d 242 (2015). Standing implicates the court's subject matter jurisdiction; the plenary standard of review pertains to questions of standing. *State Marshal Assn. of Connecticut, Inc.* v. *Johnson*, 198 Conn. App. 392, 398–99, 234 A.3d 111 (2020).

In its zoning appeal, the plaintiff alleged, in relevant part, that it was the owner of the property and desired to construct and operate a volume reduction plant and transfer station on the property. It also alleged that a volume reduction plant and transfer station is a solid waste facility and that § 22a-208b (b) provides that "[n]o municipal regulation adopted pursuant to § 8-2 shall have the effect of prohibiting the construction, alteration or operation of solid waste facilities within the limits of a municipality." The plaintiff further alleged that construction and operation of a volume reduction plant and transfer station is not a permitted use in the city's IG-80 zone. The appeal also alleged that the site plan complied with all of the requirements applicable to uses permitted in the IG-80 zone and that the defendant denied the site plan on the ground that "a volume reduction plant and transfer station is not a permitted use in the zone." In addition, the plaintiff alleged that the

defendant "acted arbitrarily, capriciously, unlawfully, and in abuse of the discretion vested in it . . . [b]y denying the site plan . . . as a use not permitted by the regulations when that denial is in direct violation of . . . § 22a-208b . . . ." The plaintiff prayed that the court sustain its appeal and order the defendant to approve the site plan.

On March 26, 2018, the defendant filed a motion to dismiss the appeal on the ground that the plaintiff was not aggrieved by its decision to deny the site plan as it was not the owner of the property. Following an evidentiary hearing, the trial court denied the motion to dismiss on May 8, 2018, finding that the plaintiff was an equitable owner of the property.[21]

The defendant argues that the plaintiff sought approval to construct a transfer station and volume reduction facility on its property. The defendant claims that it has demonstrated that the regulations do not have the effect of prohibiting the construction, alteration or operation of White Street, which is the same type of facility the plaintiff wishes to construct and operate. It also claims that the plaintiff asserted, and that the trial court agreed, that the regulations violate § 22a-208b (b) because they do not permit all subtypes of solid waste facilities in the city, and that the plaintiff lacks standing to raise the alleged violation of § 22a-208b (b) as to any type of solid waste facility other than the one it seeks to construct and operate.

The plaintiff responded that it did not seek to have the regulations invalidated. In its appeal, it merely sought to have the court order the defendant to approve the site plan that complied with the regulations related to industrial uses in the IG-80 zone as required by § 22a-208b (b). We agree with the plaintiff. We also conclude that the plaintiff is aggrieved by the defendant's denial of the site plan and that there is an actual controversy at issue. See *AvalonBay Communities, Inc.* v. *Zoning Commission*, 87 Conn. App. 537, 542, 867 A.2d 37 (2005), aff'd, 280 Conn. 405, 908 A.2d 1033 (2006). Moreover, the trial court did not invalidate the regulations. Rather it held that the ground on which the defendant denied the site plan, i.e., a volume reduction plant and transfer station is not a permitted use in the zone, did not withstand judicial scrutiny pursuant to § 22a-208b (b).

As we concluded in part I of this opinion, White Street's existence is not relevant to the question of whether the defendant properly denied the site plan pursuant to § 22a-208b (b). The plaintiff's zoning appeal sought to have the site plan approved, not to invalidate the regulations. The defendant's claim lacks merit and therefore fails.[22]

For the foregoing reasons, we agree with the trial court that the regulations are incompatible with the

second sentence of § 22-208b (b), which provides that "[n]o municipal regulation adopted pursuant to section 8-2 shall have the effect of prohibiting the construction, alteration or operation of solid waste facilities within the limits of a municipality."

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] See General Statutes § 22a-208 (powers and duties of Commissioner of Energy and Environmental Protection regarding solid waste management).

[2] See General Statutes § 8-2 (zoning commission's authority to regulate).

[3] The waste management terms used in this opinion are defined in General Statutes § 22a-207, which provides in relevant part: "(3) 'Solid waste' means unwanted or discarded solid, liquid, semisolid or contained gaseous material, including, but not limited to, demolition debris, material burned or otherwise processed at a resources recovery facility or incinerator, material processed at a recycling facility and sludges or other residue from a water pollution abatement facility, water supply treatment plant or air pollution control facility . . . (4) 'Solid waste facility' means any solid waste disposal area, volume reduction plant, transfer station, wood-burning facility or biomedical waste treatment facility . . . (5) 'Volume reduction plant' means any location or structure, whether located on land or water, where more than two thousand pounds per hour of solid waste generated elsewhere may be reduced in volume, including, but not limited to, resources recovery facilities, waste conversion facilities and other incinerators, recycling facilities, pulverizers, compactors, shredders, balers and composting facilities . . . (11) 'Transfer station' means any location or structure, whether located on land or water, where more than ten cubic yards of solid waste, generated elsewhere, may be stored for transfer or transferred from transportation units and placed in other transportation units for movement to another location, whether or not such waste is stored at the location prior to transfer . . . ."

[4] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board, including a decision to approve or deny a site plan . . . may take an appeal to the superior court for the judicial district in which the municipality is located . . . ." In a decision it issued on May 8, 2018, the court found that the plaintiff was aggrieved by the defendant's decision to deny the site plan.

[5] General Statutes § 22a-208b (b) provides: "Nothing in this chapter or chapter 446e shall be construed to limit the right of a municipality to regulate, through zoning, land usage for an existing or new solid waste facility. No municipal regulation adopted pursuant to section 8-2 shall have the effect of prohibiting the construction, alteration or operation of solid waste facilities within the limits of a municipality."

[6] During oral argument before us, the defendant represented that if we affirm the judgment of the court, we need not reach its primary jurisdiction claim.

[7] General Statutes § 22a-208b (a) provides: "The Commissioner of Energy and Environmental Protection may issue a permit to construct a facility for the land disposal of solid waste pursuant to section 22a-208a, provided the applicant submits to the commissioner a copy of a valid certificate of zoning approval, special permit, special exception or variance, or other documentation, establishing that the facility complies with the zoning requirements adopted by the municipality in which such facility is located pursuant to chapter 124 or any special act."

General Statutes § 22a-208a (a) provides in relevant part: "The Commissioner of Energy and Environmental Protection may issue, deny, modify, renew, suspend, revoke or transfer a permit, under such conditions as he may prescribe and upon submission of such information as he may require, for the construction, alteration and operation of solid waste facilities, in accordance with the provisions of this chapter and regulations adopted pursuant to this chapter. . . . In making a decision to grant or deny a permit to construct a solid waste land disposal facility . . . the commissioner shall consider the character of the neighborhood in which such facility is located and may impose requirements for hours and routes of truck traffic, security and fencing and for measures to prevent the blowing of dust and debris and to minimize insects, rodents and odors. In making a decision to grant or deny a permit to construct or operate a new transfer station, the commis-

sioner shall consider whether such transfer station will result in disproportionately high adverse human health or environmental effects. . . ."

[8] The city and its Housing Authority (housing authority) were granted intervenor status in the permit proceedings before the Department of Energy and Environmental Protection. When the commissioner issued the plaintiff a permit, the city and the housing authority filed an administrative appeal under the Uniform Administrative Procedures Act, General Statutes § 4-166 et seq. That appeal also was assigned to the court, *Hon. Stephen F. Frazzini*, judge trial referee, who dismissed the administrative appeal. In adjudicating the present zoning appeal, Judge Frazzini took judicial notice of the companion case, *Danbury* v. *Klee*, Superior Court, judicial district of New Britain, Docket No. CV-17-6036083-S.

[9] In count two, the plaintiff sought a declaratory judgment as to whether its proposed solid waste facility is exempt from the regulations or, if not, is subject to the regulations as a permitted use. The plaintiff did not pursue count two at trial, and the court considered the claim abandoned.

[10] The defendant has not claimed that the site plan failed to comply with the requirements for uses permitted in the zone.

[11] Section 1.D.2 of the Danbury Zoning Regulations provides: "Except as otherwise provided for in these Regulations for lawfully existing nonconformities, no land, structure or premises, or part thereof, shall be constructed, reconstructed, extended, enlarged, or the use changed, or the dimensional requirements of lots, yards, courts, or open spaces changed except in conformity with the requirements of these Regulations for the applicable district in which it is located. No building or buildings shall occupy in the aggregate a greater percentage of lot area, nor be greater in height than as set forth in the applicable section hereof, except as otherwise specifically provided for in these Regulations."

[12] Section 6 of the Danbury Zoning Regulations is titled Industrial Districts and provides in relevant part:

"6.A. LIGHT INDUSTRIAL DISTRICT: IL-40.

"6.A.1. Purpose and Intent. The purpose of this district is to provide an area for expansion of the industrial base in the City. The uses allowed in this district are of a limited and light industrial nature that if appropriately developed can be compatible with abutting commercial and residential uses.

"6.A.2. Uses. Land and structures may be used only for the following:

"a. Permitted uses. . . .

"b. Special Exception Uses. . . .

"(14) Transfer station if in existence prior to the effective date of this amendment. [Eff. 10/15/2007] . . . .

"6.B. GENERAL INDUSTRIAL DISTRICT: IG-80.

"6.B.1. Purpose and Intent. The purpose of this district is to provide an area for manufacturing, assembly, and product processing of a more general industrial nature than permitted in the IL-40 district. Large lot areas are required to provide an appropriate buffer for the heavy industrial uses that are permitted. This district is also appropriate for planned industrial uses organized in an industrial park setting in suburban locations.

"6.B.2. Uses. Land and structures may be used only for the following.

"a. Permitted Uses. . . .

"(24) Wood waste processing. See Section 6.B.4.d.

"b. Special Exception Uses. . . .

"(7) Screening of earth materials, not including washing or crushing. See Sec. 6.B.5.c.

"(8) Sewage works, transformer substation, water storage facility. See Sec. 6.B.5.d. [Eff. 9/29/2011] . . . ."

[13] See *MSW Associates*, *LLC* v. *Planning Commission*, Superior Court, judicial district of Danbury, Docket No. CV-08-4008817-S (August 8, 2014). The trial court, *Ozalis*, *J.*, upheld the decision of the city's planning commission to deny the plaintiff's site plan for a special exception permit and site plan approval for a transfer station at 16 Plumtrees Road. Judge Ozalis noted that transfer stations had been a permitted use at the time of that site plan application, but that the city's regulations "subsequently removed transfer stations from permitted special exceptions for the IG-80 zone . . . ." Id., n.1.

[14] The court also found that the commissioner had issued a permit for a " 'Single Item Recycling Facility' " at 6 Plumtrees Road. A cover letter for that site plan application stated that the " 'intended use' " of the facility " 'would be to operate a wood waste and brush recycling facility.' "

[15] The court cited numerous rules of statutory construction, including among others, that "[w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . .

In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, 330 Conn. 372, 380, 194 A.3d 759 (2018). The court is "required to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provisions at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 748, 865 A.2d 428 (2005).

[16] Pursuant to its review of the legislative history, the court found that "[t]he crux of § 22a-208b (b) was to restore the authority of municipalities to regulate solid waste facilities and to decide where within a municipality these facilities should be located, but [not] to prevent municipalities from banning any type of solid waste facility within [its] borders." The court quoted remarks of State Senator J. Edward Meyer during a discussion of P.A. 12-2: "I think that the balance is here because within zoning, for example, a solid waste facility might not be appropriate in a residential zone, but would be appropriate in a commercial zone. And the town, if it did an outright prohibition, and just said that there is no zone in which a solid waste facility could be constructed in that town. You've got a very direct provision in this bill that we're debating today that says you can't prohibit solid waste facilities. So within a zoning plan or a zoning scheme of any town there will be, as a matter of law, a place in which one of these facilities could be constructed." 55 S. Proc., Pt. 1, 2012 Sess., pp. 164–65.

In its brief, the defendant notes the comments made by Representative Richard Roy, who moved for passage of P.A. 12-2, stating in relevant part: "This bill clarifies that municipalities do retain those powers to enact and implement local zoning laws that regulate safety issues such as fire and traffic concerns at solid waste facilities in their communities. . . . The Department of . . . Energy and Environmental Protection will possess sole regulatory authority over those facilities and its power to impose conditions related to such local concerns are limited. The bill makes clear that towns can continue to regulate those traditional local issues. *A town would not be permitted to pass an ordinance banning such facilities*." (Emphasis added.) 55 H.R. Proc., Pt. 1, 2012 Sess., pp. 324–25.

[17] The court also addressed the defendant's claim that the court should apply the doctrine of primary jurisdiction if it determined that the regulations have the effect prohibited by § 22a-208b (b) and either remand the case or stay the judicial proceeding to enable the zoning commission to adopt new regulations that comply with § 22a-208b (b). "Primary jurisdiction . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." (Internal quotation marks omitted.) *Waterbury* v. *Washington*, 260 Conn. 506, 574, 800 A.2d 1102 (2002). The court stated that the present case did not require "the resolution of threshold issues" within "the specialized knowledge of the agency involved." (Internal quotation marks omitted.) The issue presented is one of law, i.e., do the regulations comply with the restrictions of § 22a-208b (b). The court did not need agency help in interpreting overly technical regulations. Trial courts regularly decide zoning appeals.

[18] There is some discrepancy between the defendant's statement of the issues and the issues as they are briefed. We will address the claims as the defendant briefed them.

[19] The defendant represented that the trial court favorably cited *Roncari*, supra, 281 Conn. 66. Our review of the trial court's memorandum of decision discloses that the court cited *Roncari* only for the proposition that zoning imposed on transfer stations within the IL-40 zone in existence as of October, 2007, does not violate the uniformity requirement of § 8-2 (a). The court, however, concluded that the regulations allowing within the IL-40 zone only transfer stations in existence as of October, 2007, prohibit by implication the construction of any transfer station after that date, as well as the operation of any such newly constructed facilities, all in contravention of the plain language of § 22-208b (b).

[20] The defendant argues that the plaintiff lacks standing because it has no legal right to set judicial machinery in motion because it has no real interest in the cause of action. See *AvalonBay Communities, Inc.* v. *Zoning Commission*, 87 Conn. App. 537, 542, 867 A.2d 37 (2005), aff'd, 280 Conn. 405, 908 A.2d 1033 (2006). We disagree. The plaintiff sought the approval of a site plan that the defendant denied and therefore was aggrieved by the defendant's action.

[21] The court found that the plaintiff had a contract to purchase the property. See *Salce* v. *Wolczek*, 314 Conn. 675, 688–89, 104 A.3d 694 (2014) (doctrine of equitable conversion vests equitable title in purchaser of land under contract).

[22] Because we affirm the judgment of the court, we decline to address the defendant's primary jurisdiction claim. See footnote 6 of this opinion.